Judy L. Berman
406 G Street, Suite 208
Anchorage, AK 99501
(907)272-3952

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JUDY L. BERMAN,                    )
                                   )
        Plaintiff,                 )
                                   )
vs.                                )
                                   )
ANCHORAGE POLICE DEPT.,            )
OFC. ROBERT DUTTON, and            )
SGT. GIL DAVIS,                    )
                                   )
        Defendants.                )
_____)
Case No.  A04-0227 CV (TMB)

## REPLY TO OPPOSITION TO MOTION TO EXCLUDE
## TESTIMONY OF EXPERT WITNESS

COMES NOW the plaintiff, Judy L. Berman, and hereby files her reply to the defendants' opposition to her motion to exclude the testimony of Officer John Daily, the defendants' proposed expert witness.

**1.  The defendants have not provided a valid excuse for failing to comply with the Court's order for the disclosure of expert witnesses.**

The defendants argue that they should be excused from complying with the Court's order regarding the deadline for expert disclosure pursuant to FRCP 26(a)(2) because the case was reassigned within the Municipal Attorney's Office in mid-September 2005, and the new attorney did not review the case to

determine if an expert should be brought in until six weeks later. However, the defendants' current attorney does not provide a satisfactory explanation of why she failed to review the case until late October, or why the former attorney assigned to the case did not consider whether an expert should be retained. The Court's deadline was issued in June 2005, and at all times since then the defendants have been represented by counsel who have been well aware of the Court's order. Under these circumstances, there is no reason why the defendants could not have provided their expert disclosure by October 1, 2005, as ordered by the Court, instead of waiting until November 18, 2005, almost seven weeks later.

**2. Officer Daily's opinion does not meet the requirements of Federal Evidence Rule 702.**

The defendants oppose the plaintiff's motion on three grounds. They argue that experience in a particular field may be sufficient to qualify a witness as an expert; that Officer's Daily's experience qualifies him to testify as an expert on Anchorage Police Department procedures and training; and that Officer Daily has not in fact usurped the jury's role in making factual findings and credibility determinations.

The plaintiff does not dispute that it is possible for a witness to be qualified as an expert based primarily on their experience. Officer Daily is clearly an experienced police officer, who also serves as an instructor at the Police Academy.

However, it is not at all clear that his instruction is specifically on the subject of proper police procedure. (See Resume of Officer John Daily.) He has never testified as an expert on the subject of police procedure or authored any publications on that subject. The defendants have the burden of proving that their proposed expert's testimony is admissible under Evidence Rule 702. "The proponent of the expert testimony carries a substantial burden under Rule 702." *Cook Ex Rel. Tessier v. Sheriff of Monroe County* 402 F.3d 1092, 1107 (11th Cir 2005). It has also been noted that, "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert . . ." *Id.* at 1107, citing *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir. 1999) (citing *Daubert,* 509 U.S. at 592 n. 10, 113 S. Ct. 2786).

Even more importantly, as discussed below, Officer Daily's report does not make any mention of Police Department training and procedures. Instead, he analyzes his view of the facts by applying the his understanding of the law to those facts, which is in fact he role of the jury. And contrary to the defendant's assertion, he makes numerous factual determinations that are disputed by the plaintiff, as outlined below.

**a.  Officer Daily's report makes no reference to Police Department policies and procedures.**

On page 5 of their opposition the defendants state that, "Officer Daily is more than qualified to serve as an expert on

the issue of proper APD procedures and training with respect to the response of Officers Dutton and Davis to the bizarre behavior of Ms. Judy Berman on April 6, 2002."[1]

The plaintiff agrees that police training and established procedure is likely to be relevant to the issues of this case. For this reason, the plaintiff requested in discovery that defendant Anchorage Police Department produce copies of certain policies, procedures, and training materials. *See* Exhibit 5.[2] However, the Department refused to comply with the requests, claiming that the information is not relevant or reasonably calculated to lead to the discovery of admissible evidence. *See* Exhibit 5.    Now, however, they seek to introduce expert testimony, ostensibly on just such information.

Although the defendants claim that "[t]he expert report of Officer Daily provides information on police practices which will be of great assistance to the court in examining [the plaintiff's] claims" (Defendant's opposition p. 6), a review of the report reveals no references to police practices or to the training that police receive.    What Officer Daily does in his report is set forth his opinion based on his one-sided review of the incident.    As pointed out in plaintiff's motion, he also

---

[1]    The defendants refer to the plaintiff's conduct as "bizarre," "erratic," "explosive" and "escalat[ing]" six times in their opposition. These adjectives, however, more accurately describe Dutton and Davis' conduct, given their actions which gave rise to the plaintiff's complaint.
[2]    The plaintiff's Exhibit 5 will be filed pursuant to Amended Local Rule 5.3(g)(2)[B].

makes a number of incorrect statements of the law, and, in any event, it is the Court's function to instruct the jury on the law that applies, not the function of an expert witness.  Officer Daily's opinion will serve more to confuse the jury than to educate it.

### b. Officer Daily makes numerous factual and legal findings regarding disputed facts.

Contrary to what the defendants' have argued, Officer Daily's report is based almost entirely upon facts which are disputed by the plaintiff.  If Officer Daily had based his opinion on the plaintiff's account of the incident, rather than on the officers', his report and conclusions would have been vastly different.

The following is a non-exhaustive discussion of some of the factual and legal findings that Officer Daily makes based on facts which are in dispute:

As noted in the plaintiff's motion, Officer Daily makes much of the allegation that the plaintiff was angry and screaming, which the plaintiff denies. (Report of Officer Daily, p.1.)  He then concludes that the plaintiff had violated "AMC 8.30.120.A2, Disorderly Conduct", even though it is doubtful that sounding a vehicle horn several times in a commercial parking lot rises to the level of "reckless disregard for the peace and privacy of others."  He further concludes that "Ofc. Dutton and Sgt. Davis then had the duty to investigate further, and by their

observations, the authority to take action, up to and including arrest." (Daily Report, p. 2.)  However, it is clear that the investigatory stop of the plaintiff was in fact improper under the *Coleman* standard, which permits the police to stop someone only if there is "reasonable suspicion that imminent public danger exists, or serious harm that has recently occurred was caused by a particular person" *Coleman v. State,* 553 P.2d 40, 43 (Alaska 1976).  In this case, all that had occurred was a minor dispute over a parking space, which was in fact over prior to the investigatory stop.   Dutton's report clearly states that he observed the Chens entering the store while the plaintiff remained in her vehicle. (Exhibit 2 to plaintiff's motion, p. 1.)

Officer Daily states that Dutton "took the first step of detention" by parking his patrol car behind the plaintiff's vehicle. (Daily Report, p. 2.)  The plaintiff, however, maintains that the vehicle was not parked behind her car, but rather at the store entrance.  *See* Complaint, Paragraph 15.

The plaintiff's account of Dutton's initial investigatory stop is quite different from the one relied on by Officer Daily. *See* Complaint, Paragraphs 8-11. The defendants' statement in their Opposition that "[s]he does not dispute the fact that she walked away from Officer Dutton as he tried to question her" is completely untrue.(Opposition, p. 7.)  After Dutton had concluded his remarks by stating, "If you do it again, I'll find it in my

heart to cite you," the plaintiff reasonably concluded that the conversation was over.  She said "Have a great night," and began to walk away. *See* Complaint, Paragraphs 9-11.  It is undisputed that the request for identification did not come until after she was walking away. (Exhibit 2, p. 1.)  Again, if Officer Daily had relied on the plaintiff's account, rather than the officers', his conclusions would undoubtedly have been different.

When the plaintiff reached the store entrance, both officers surrounded her and restrained her by each holding one of her arms with considerable and excessive force. She could not pull away, or even move her arms, even if she had wanted to.  It was not until she agreed to produce identification that the officers released their hold on her arms just enough to allow her to open her purse and remove her wallet. *See* Complaint, paragraphs 12-13.

The plaintiff maintains that she was holding her wallet in her hands and looking for her license, in order to comply with the officers' request for identification, when Davis suddenly grabbed the wallet from her, and the officers proceeded to arrest her. *See* Complaint, paragraphs 14-15.  The defendants' allegation that she was holding her wallet to write down their names, not to produce identification, really makes no sense.   Nonetheless Officer Daily states in his report,

She pulled out her wallet from her purse and Sgt. Davis
told her to produce her identification and she refused
. . . Sgt. Davis says in his report that he took her

purse from her then to get her I.D./O.L. and she then
tried to pull away from Ofc. Dutton.  At this time both
officers took hold of her, placed her arms behind her
back and placed her in cuffs . . .

(Daily Report, p. 3.)

If Officer Daily had relied on the plaintiff's account of
events, that she was in fact complying with the officers' request
for identification when they arrested her, he could not possibly
have reached the conclusion that the officers acted
appropriately.  He also makes the rather startling statement that
the officers, "would also have been justified in taking her to
the ground or pinning her against a wall" (Daily Report, p. 3),
apparently believing that the plaintiff was not sufficiently
traumatized and brutalized by being falsely arrested and
handcuffed in public.

Finally, as discussed in the plaintiff's motion, Officer
Daily is not at all troubled by Davis' taking the plaintiff's
wallet out of her hands, or by his looking through it and
removing her driver's license, even though these actions were
clearly unlawful. (Daily Report p. 3.)

   c.  *McCloughan* **supports the plaintiff's position.**

The defendants criticize the plaintiff for citing State
rather than Federal case law in her motion.  They then proceed to
rely heavily on *McCloughan v. City of Springfield,* 208 F.R.D. 236
(C.D. Illinois, Springfield Division, 2002), a trial court

decision from the Seventh Circuit which, like Alaska law, is persuasive, rather than controlling, authority. In any event, *McCloughan* in fact supports the plaintiff's position.

In *McCloughan,* the plaintiff in a 42 U.S.C. § 1983 case sought to introduce the expert testimony of W. Ken Katsaris regarding "the appropriate standard of conduct of off-duty police officers and the use of force." *Id.* at 238. The Court ruled that, "Katsaris may testify as to proper police procedures, but he may not offer his opinions(s) as to whether those procedures were properly followed in this case." *Id.* at 240. Since Officer Daily's report consists entirely of his opinion regarding the police officers' actions, his testimony would not be admitted under *McCloughan*. Significantly, one of the issues the expert was allowed to testify about was "the propriety of the Springfield Police Department Rules of Conduct (specifically Rule 10)." *Id.* at 239. As noted above, Officer Daily's report made no references to Anchorage Police Department procedures or rules, and the defendants refused to disclose information about Department procedures to the plaintiff in discovery.

The Court in *McCloughan* further stated that,

the Court believes that, if it were to allow Katsaris to offer his opinion in this case as to whether [the police officers] followed proper procedures, the Court, in essence, would be allowing Katsaris to, as an

expert, make and relay credibility findings to the jury regarding the witnesses' testimony. Such testimony is improper and is not helpful to the jury.

*Id.* at 239.

As discussed above, Officer Daily's opinion is almost entirely based on disputed facts, and contains no information about established policies and procedures. As such, it very clearly invades the province of the jury to make factual and credibility determinations, and is therefore improper and not helpful to the jury.

The Court in *McCloughan* also noted that "expert testimony cannot be used solely to bolster the credibility of the government's fact-witnesses by mirroring their version of events" *Id.* at 240 (Citations omitted), but that is exactly what Officer Daily's testimony seeks to do. It was also noted that expert testimony "must have esoteric aspects reasonably perceived as beyond the ken of the jury" *Id.* at 239 (Citations omitted).

### 3.  Conclusion

Based upon the foregoing, as well as on the plaintiff's motion, the plaintiff respectfully requests that the Court grant her Motion to Exclude Testimony of Expert Witness.


DATED this 23rd day of January, 2006.

/s/_Judy L. Berman
Judy L. Berman
Alaska Bar No. 9106027