Judy L. Berman
406 G Street, Suite 208
Anchorage, AK 99501
Phone: (907)272-3952
Fax: (907) 272-3953
E-mail: judyberman@gci.net

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JUDY L. BERMAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ANCHORAGE POLICE DEPT., | ) |
| OFC. ROBERT DUTTON, and | ) |
| SGT. GIL DAVIS, | ) |
| | ) |
|     Defendants. | ) |
| _____ | ) |

Case No.  A04-0227 CV (JKS)

**MOTION TO COMPEL DISCOVERY**

    The plaintiff, Judy L. Berman, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, hereby moves this Court for an order compelling discovery from defendant Anchorage Police Department.  As discussed in more detail below, the general subject of the discovery sought from the defendant includes information regarding complaints and disciplinary proceedings regarding defendants Dutton and Davis, documents relating to the termination of Dutton's employment with the Department, and information regarding certain Department policies and procedures and officer training.

    The plaintiff certifies that she attempted to resolve this

matter without Court involvement. See correspondence between plaintiff's attorney and defendants' attorney submitted as Exhibits 1 and 2.[1] Pursuant to Local Rule 37.1(a)(2), the plaintiff states that a Good Faith Certificate (Form 37.1) cannot be attached because her attorney has moved to withdraw and has ceased working on the case. However, Assistant Municipal Attorney Mary Pinkel's letter makes her position clear, and further attempts to confer would have been futile. (Exhibit 2).

### STATEMENT OF POINTS AND AUTHORITIES

The plaintiff's Complaint alleges violation of civil rights under 42 U.S.C.§ 1983 and state and federal law, false arrest, assault and battery, malicious prosecution and punitive damages. The police officers' conduct which gave rise to her Complaint is set forth in the Complaint and in prior pleadings filed with the court.

On September 29, 2005, the plaintiff served defendant Anchorage Police Department with her first set of discovery requests. Exhibit 3. The Department served the plaintiff with its responses to these requests on November 1, 2005. Exhibit 4.

---

[1] Ms. Pinkel's letter makes reference to AS 28.15.131, asserting that it "requires citizens to produce their driver's licenses to the police upon demand." However, as noted in the plaintiff's Motion to Exclude Testimony of Expert Witness, "a licensing statute cannot be used for the purpose of finding out who a [person] is . . .In other words the licensing statute cannot be used as a means for obtaining information or evidence not related to the licensing requirement." *Schraff v. State,* 544 P.2d 834, 839 (Alaska 1975). There is no dispute that Dutton requested the plaintiff's ID in order to determine her identity, not to find out whether she was licensed to operate a motor vehicle. This issue was in fact brought to Ms. Pinkel's attention on December 13, 2005, prior to the date of her letter.

The Department objected to the majority of the discovery requests, and persisted in its objections despite efforts to resolve the issue. Exhibits 1 and 2.

**1. The plaintiff is entitled to discovery of complaints and disciplinary proceedings involving Dutton and Davis, and of information related to the termination of Dutton's employment.**

Interrogatory No. 5 propounded by the plaintiff requests a complete description of all complaints received by the Department regarding Robert Dutton, whether formal or informal, and information on how each was resolved. Interrogatory No. 6 requests a complete description of all disciplinary actions initiated against Dutton, including the events leading to each action and the reasons for the action taken. Requests for Production Nos. 13 and 14 request all documents related to the information sought in Interrogatories 5 and 6.

Interrogatories 7 and 8, and Requests for Production Nos. 15 and 16 request the same information listed above, in regard to Gil Davis. Request for Production No. 11 requested all documents related to the termination of Dutton's employment with the Department. Dutton left the Department on July 7, 2003. Exhibit 4, p. 2.

The Department objected to each of the above discovery requests on the same grounds:

> This request seeks information which is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, this request seeks confidential personnel and law enforcement files which we are prohibited from disclosing pursuant to AMC 3.30.016, AMC 3.90.040B and AMC 3.90.040C. Moreover,

>this request also seeks files which we are prohibited form disclosing pursuant to AMC 3.90.040O and pursuant to the Alaska Constitutions' [sic] broad protection of the privacy rights of individuals. This request is also over-broad and burdensome.

Exhibit 4, p. 3 et seq.

> **a. The information requested is relevant to the plaintiff's claims.**

FRCP 26(b)(1) states, in part, that, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." In *Hampton v. City of San Diego,* 147 F.R.D. 227 (S.D. Cal., 1993) the court noted that:

> This rule is construed broadly and includes "any matter that bears on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed. 2d 253 (1978). Discovery is not limited to the issues raised only in the pleadings but rather it is designed to define and clarify the issues. *Id.* at 351, 98 S. ct. at 2389.

*Id.* at 229.

In *Hampton, Supra,* the plaintiffs in a civil rights action involving alleged police misconduct requested documents regarding the training, conduct, performance or evaluation of the police officers as well documents relating to complaints filed against the officers. The court found that these documents were in fact relevant:

> Information contained in these files may be relevant on the issues of credibility, notice to the employer,

>ratification by the employer and motive of the officers. Further, information concerning other instances of misconduct may also be relevant on the issue of punitive damages, in that the information may lead to evidence of a continuing course of conduct reflecting malicious intent.

*Id.* at 229.

*Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) also involved a 42 U.S.C.§ 1983 action alleging excessive force by police officers. The court found the officers' personnel files, "including the disciplinary record, and any other documents . . . that concern [] training, duties performance, assignments and mental and physical condition" to be relevant to the issues presented. *Id.* at 614.

>The personnel files of the defendant-officers in the instant case are relevant to Plaintiff's excessive force claim. The personnel files contain employee performance appraisals which contain information on each officer's ethics, interpersonal relationships, decision-making abilities, work and safety habits, and crime scene management techniques. They also contain information on promotions, training records, letters of commendation, interviews, employee orientation, and employment applications. Each of these types of documents may be quite relevant to issues involved in Plaintiff's excessive force claim, because such documents may reveal the defendant officers' patterns of behavior, as well as the City's response to such behavior.

*Id.* at 615.

*Ramirez v. County of Los Angeles,* 231 F.R.D. 407 (C.D. Cal., 2005) also held that complaints and discipline against a Sheriff's Department Detective were relevant in a civil rights action. "'Complaints against officers . . . may show, among

other things, the character or proclivity of such officers toward violent behavior or possible bias' (Citation omitted) . . . Further, such documents would bear upon [the Sheriff's Department's] notice of [the detective's] previous alleged misconduct and/or responses to such alleged misconduct." *Id. at 412.*

In this case the plaintiff is not requesting the entire personnel files of Dutton and Davis; only documents and information related to complaints, discipline and terminations. Thus, the discovery requests cannot be fairly characterized as "over-broad and burdensome." In addition, this objection is too general to merit consideration. "The familiar litany of general objections, including overly broad, burdensome, or oppressive, will not alone constitute a successful objection to an interrogatory, nor will a general objection fulfill the objecting party's burden to explain its objections. (Citation omitted)." *Ramirez, Supra.* at 412.

      **b. The Department's claim of privilege is improper, because federal, not local, law governs.**

The Department also claims that the requested information is confidential and therefore privileged under the Anchorage Municipal Code. Based on a review of the Code sections cited by the defendants, it is not entirely clear that all of the information requested by the plaintiff would be considered confidential. However, that issue is essentially moot because

the defendants cannot claim a state or local privilege in a case brought under a federal statute. "The Supreme Court has held that questions of evidentiary privilege arising in the course of the adjudication of federal rights are governed by the principles of federal common law. *United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989), citing Rule 501 of the Federal Rules of Evidence." *Miller v. Pancucci,* 141 F.R.D. 292, 297 (C.D. Cal. 1992).

*Miller* further stated that the Ninth Circuit has interpreted this holding to allow the discovery of personnel files, despite claims of state-created privileges, citing *Garret v. City and County of San Francisco,* 818 F.2d 1515, 1519 fn. 6 (9th Cir. 1987). The court further noted that:

> It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statute whose central purpose is to protect citizens from abuses of power by state or local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims. *Kelly v. City of San Jose,* 114 F.R.D. 653, 656 (N.D. Cal. 1987).

*Miller* at 297-298.

If a federal privilege is claimed, the court will weigh the potential benefits of disclosure against potential disadvantages. "The balancing test has been moderately pre-weighted in favor of disclosure" because privileges operate in derogation of the truth finding process. *Id.* at 299-300.

If a federal privilege had been claimed in this case, the plaintiff would argue that the harm she would suffer from being denied access to relevant information would far outweigh the defendants' interest in keeping documents confidential, especially since the court could issue a protective order prohibiting redisclosure of the information. She would note, among other things, that in *Soto v. City of Concord, 162* F.R.D. 603, 604 (N.D. Cal 1995) the court noted that privacy interests in police files "must be balanced against the great weight afforded to federal law in civil rights cases against police departments. '[T]hrough constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important.' *Kelly* 114 F.R.D. at 660 (citations omitted)."

However, the Court need not reach that issue, since the defendants have not asserted a federal privilege in their objections. Since the defendants have not objected to the plaintiff's discovery requests based on a claim of federal privilege, they have waived that objection. *Miller* at 409.

**2. The plaintiff is entitled to discovery of certain police policies, procedures and training.**

Plaintiff's Requests for Production Nos. 5, 6, and 7 (Exhibit 3) request information regarding police policies and procedures on the subject of requesting identification from members of the public. Requests for Production Nos. 8, 9, and 10

(Exhibit 3) request training material on that subject.

The defendants objected, stating that the requests seek irrelevant information, are confusing, and not reasonably calculated to lead to the discovery of admissible evidence. With regard to Requests Nos. 6 and 9, the defendants also claimed privilege under the Municipal Code. The defendants also stated that, "discovery is ongoing and we reserve the right to supplement this and other responses as more information becomes available." (Exhibit 4).

The information sought, however, is in fact relevant and reasonably calculated to lead to the discovery of admissible evidence. It is undisputed that the plaintiff stopped and spoke with Officer Dutton, and that he did not request identification until after she was walking away. It is also clear that there was insufficient justification for the initial investigatory stop under Alaska law. *See e.g. Coleman v. State,* 553 P.2d 40 (Alaska 1976). Nonetheless, the officers apparently felt it appropriate to use physical force against the plaintiff for the sole purpose of obtaining her identification. The plaintiff is entitled to discover what Department policies and procedures govern this type of situation, whether those procedures were followed, if the policies are in fact appropriate, what training the officers received and whether they were adequately trained.

In *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) the court ordered the discovery of police guidelines, directives

and policy statements stating that "*Kelly* encourages the disclosure of manuals, memoranda, guidelines, and other documents that reflect the policies of the police department. 114 F.R.D. at 666." *Id.* at 622. The court found that this information was also relevant because it may show a pattern or practice of civil rights violations, relating to claims against the city under the analysis of *Monnel v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 611 (1978).

In *Miller v. Pancucci, Supra* the court stated that it could "discern few more relevant documents" than documents relating to training records of the defendant officers. The court also stated that these documents "may prove the sort of policy necessary to prevail against Defendant City of San Bernadino under the analysis of *Monnel v. New York City Dept. of Social Services* (Citation omitted). *Id.* at 296.

As discussed above, the defendant's claim of an official privilege under local law cannot defeat the plaintiff's request for discovery because federal rather than local law applies to the issue. The defendant has not asserted a claim of privilege under federal law and so has waived that objection, but it is nonetheless clear that a balancing of competing interests under federal common law would favor disclosure of these documents.

### 3. Conclusion

Based upon the foregoing, the plaintiff respectfully requests that her motion to compel discovery be granted.

DATED this 30th day of January, 2006.

        _s/   Judy L. Berman_____
        Judy L. Berman
        406 G Street, Suite 208
        Anchorage, AK 99501
        Phone: (907)272-3952
        Fax: (907)272-3953
        E-mail: judyberman@gci.net
        Alaska Bar No. 9106027

**Certificate of Service**

I hereby certify that on January 30th, 2006, a copy of the foregoing MOTION TO COMPEL DISCOVERY was served electronically on:

Mary Pinkel
John Pharr

s/ Judy L. Berman

**EXHIBIT 1**

(LETTER FROM PLAINTIFF'S COUNSEL TO DEFENDANTS' COUNSEL)

**FILED CONVENTIONALLY**

**EXHIBIT 2**

(LETTER FROM DEFENDANTS' COUNSEL TO PLAINTIFFS' COUNSEL)

**FILED CONVENTIONALLY**

**EXHIBIT 3**

(PLAINTIFF'S DISCOVERY REQUESTS TO DEFENDANT ANCHORAGE POLICE DEPARTMENT)

**FILED CONVENTIONALLY**

**EXHIBIT 4**

(DEFENDANTS' RESPONSE TO DISCOVERY REQUESTS)

**FILED CONVENTIONALLY**