```
 1                IN THE UNITED STATES DISTRICT COURT
 2                    FOR THE DISTRICT OF ALASKA
 3   JUDY L. BERMAN,                  )
                                      )
 4              Plaintiff,            )
                                      )
 5        vs.                         )
                                      )
 6   ANCHORAGE POLICE DEPARTMENT,     )
     OFFICER ROBERT DUTTON and        )
 7   SGT. GIL DAVIS,                  )
                                      )
 8              Defendants.           )
     _____)
 9   Case No. A04-0227 CV (JKS)
10                 DEPOSITION OF ROBERT DUTTON
11   APPEARANCES:
12        FOR THE PLAINTIFF:     MR. JOHN C. PHARR
                                 Attorney at Law
13                               733 West 4th Avenue, Suite 308
                                 Anchorage, Alaska   99501
14                               (907) 272-2525
15        FOR THE DEFENDANTS:    MS. MARY B. PINKEL
                                 Municipality of Anchorage
16                               Assistant Municipal Attorney
                                 632 West 6th Avenue, Suite 730
17                               Anchorage, Alaska   99501-6650
                                 (9070 343-4545
18
          ALSO PRESENT:          MS. JUDY L. BERMAN
19
                           * * * * * *
20
21
22
23
24
25
```

3

| | | |
|---|---|---|
| 1 | A | Well, other than what I had written in my report was |
| 2 | | that she had told me to have a nice day and began |
| 3 | | walking off. |
| 4 | Q | Do you have an independent recollection of that? |
| 5 | A | I have an independent recollection of the incident and |
| 6 | | Carrs, but as far as being able to recall exactly what |
| 7 | | was said between two parties almost three years ago, |
| 8 | | no, I -- or over three years ago, I don't.  I know |
| 9 | | almost from the git-go she told me she was going to sue |
| 10 | | me, I didn't have the right to be harassing her, |
| 11 | | contacting her and things of that nature.  I -- that I |
| 12 | | do recall.  But like I said, at one point when she |
| 13 | | started trying to go into the store again without |
| 14 | | ID'ing herself, I did place her in what we call a |
| 15 | | sleeve guide. |
| 16 | Q | What is a sleeve guide? |
| 17 | A | A sleeve guide is one of the lowest forms of physical |
| 18 | | control that you use on an uncooperative person. |
| 19 | | Meaning lowest measures would be, you know, down here |
| 20 | | is a sleeve guide, up here is a baton, up here is |
| 21 | | deadly force.  I mean it's rock bottom basically. |
| 22 | Q | Okay.  How do you do a sleeve guide? |
| 23 | A | Just simply by having a person by their elbow..... |
| 24 | Q | Um-hum. |
| 25 | A | .....and holding their hand and then just simply |

| | | |
|---|---|---|
| 1 | | guiding them where you want them to go. |
| 2 | Q | Okay.  And you say you did a sleeve guide? |
| 3 | A | I did. |
| 4 | Q | Okay.  Which arm did you do the sleeve guide on? |
| 5 | A | I have no recollection of that but typically I would |
| 6 | | always do it away from my gun side.  So probably my |
| 7 | | left hand on her right arm. |
| 8 | Q | All right. |
| 9 | A | But I can't guarantee that at this time. |
| 10 | Q | Okay.  What happened at that point? |
| 11 | A | She demanded to see my identification, so I showed her |
| 12 | | the badge that was pinned on my chest and I pulled my |
| 13 | | wallet out and showed her my department ID so that she |
| 14 | | could confirm that I was in fact a police officer. |
| 15 | | Sgt. Davis came in probably close to now and he |
| 16 | | basically stood as what I would call a cover officer |
| 17 | | for my contact.  Just watching my back basically, in |
| 18 | | layman's terms.  Eventually she began digging in her |
| 19 | | purse because she wanted to write our names down. |
| 20 | Q | How do you know she wanted to write your names down? |
| 21 | A | She told me. |
| 22 | Q | Okay. |
| 23 | A | She said I want to write your names down and that's |
| 24 | | when she began digging in her purse.  She wanted to |
| 25 | | write both of our names down.  Somewhere upcoming here |

|    |   |   |
|----|---|---|
| 1  |   | something happened and she began trying to pull away |
| 2  |   | from me and spin away from me, at which time Sgt. Davis |
| 3  |   | and I both took control of one arm each placed behind |
| 4  |   | her back and I placed her in the handcuffs. |
| 5  | Q | Okay.  Now when you say spin, what do you mean spin? |
| 6  | A | I mean if I had her in a sleeve guide, if she's |
| 7  |   | starting to spin away from me in order to get away from |
| 8  |   | my control over her, that's what I would mean by |
| 9  |   | spinning away. |
| 10 | Q | And -- okay.  And then Sgt. -- Officer Davis stepped in |
| 11 |   | and..... |
| 12 | A | And assisted me. |
| 13 | Q | Okay.  Did you and Officer Davis each have one arm? |
| 14 | A | I believe so. |
| 15 | Q | All right.  And did you handcuff her like immediately? |
| 16 | A | I'm sure we did. |
| 17 | Q | Okay.  And what happened next? |
| 18 | A | I'm sure I took her out to my vehicle and placed her in |
| 19 |   | my vehicle. |
| 20 | Q | Okay.  Did you and Officer Davis each have one arm |
| 21 |   | before she pulled away, or after? |
| 22 | A | No.  Sgt. Davis didn't even have any physical contact |
| 23 |   | with her until it was time to handcuff her. |
| 24 |   | MS. PINKEL:  Okay.  I'm going to object to Ms. |
| 25 |   | Berman's laughing.  This is inappropriate behavior for a |

1  A    .....which I cite earlier.
2  Q    When you cited Ms. Berman, did you believe she had
3       intentionally, knowingly, or recklessly delayed or
4       obstructed your active investigation of a crime?
5  A    I did.  That's why we issued that citation, yes.
6  Q    Okay.  And did you also believe that she had
7       intentionally, recklessly or knowingly disobeyed your
8       lawful orders?
9  A    Well, this doesn't extend to, but it's all under the
10      same title of the statute for resisting.  So, yes.
11 Q    Okay.  And throughout this incident with Ms. Berman,
12      was it clear to you that what you were doing -- with
13      regard to her in your investigation, that what you were
14      doing was lawful?
15 A    Oh, absolutely.
16 Q    Okay.  And you explained that the level of force, and I
17      use force in quotes, that you used with Ms. Berman was
18      the lowest possible force that you could have used.....
19 A    Yes, it was.
20 Q    .....under the circumstances?
21 A    It was all what we call soft empty handed tactics.
22      Meaning there's, you know, no batons or anything like
23      that involved.  It's the lowest level of force there
24      is.
25 Q    Okay.  Thank you.

1  Q        Okay.  You and Officer Davis had her ID in hand when
2           you arrested her, correct?
3  A        No.  The ID was obtained after she was arrested.
4                MR. PHARR:  Okay.  I have no further questions.
5                MS. BERMAN:  But.....
6                MR. PHARR:  I have no further questions.
7                MS. PINKEL:  I have no further questions
8  either.  Thank you.
9           (Off record)
                       (END OF PROCEEDINGS)
10
11 MEMO:  Signature waived.