```
 1              IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF ALASKA

 3  JUDY L. BERMAN,                    )
                                       )
 4              Plaintiff,             )
                                       )
 5       vs.                           )
                                       )
 6  ANCHORAGE POLICE DEPARTMENT,       )
    OFFICER ROBERT DUTTON and          )
 7  SGT. GIL DAVIS,                    )
                                       )
 8              Defendants.            )
    _____)
 9  Case No. A04-0227 CV (JKS)

10           DEPOSITION OF SGT. GILBERT M. DAVIS

11  APPEARANCES:

12       FOR THE PLAINTIFF:     MR. JOHN C. PHARR
                                Attorney at Law
13                              733 West 4th Avenue, Suite 308
                                Anchorage, Alaska  99501
14                              (907) 272-2525

15       FOR THE DEFENDANTS:    MS. MARY B. PINKEL
                                Municipality of Anchorage
16                              Assistant Municipal Attorney
                                632 West 6th Avenue, Suite 730
17                              Anchorage, Alaska  99501-6650
                                (9070 343-4545
18
         ALSO PRESENT:          MS. JUDY L. BERMAN
19
                         * * * * * *
20

21

22

23

24

25
```

4

R & R  COURT  REPORTERS

810 N STREET
(907) 277-0572/Fax 274-8982

ANCHORAGE, ALASKA 99501

12

| | | |
|---|---|---|
| 1 | A | The problem was that Officer Dutton had -- had a reason |
| 2 | | to ask for her identification and she was refusing. |
| 3 | Q | Okay. Was he asking for identification or..... |
| 4 | A | For her driver's license. |
| 5 | Q | Well, was he asking for a driver's license or |
| 6 | | identification? |
| 7 | A | I'm not sure. I think he probably used the words |
| 8 | | both -- or used both terms. |
| 9 | Q | Okay. All right. So you..... |
| 10 | A | But I -- I'm not absolutely sure. |
| 11 | Q | Okay. You ran up to them and what happened then? |
| 12 | A | Well, from what I -- I recall, I also pitched in, I |
| 13 | | think. Usually one of our techniques is if a second |
| 14 | | officer shows up and the first one's having an |
| 15 | | uncooperative individual, usually that's person's angry |
| 16 | | at that officer and the second officer will be able to |
| 17 | | get this person calmed down a little bit. I made |
| 18 | | attempts with Ms. Berman. I don't recall what I said. |
| 19 | | Probably please just show us your license, I don't |
| 20 | | know. Something to that effect. And we didn't get -- |
| 21 | | I didn't get any more result than Officer Dutton did. |
| 22 | | (Indiscernible) Berman had a purse of some sort I think |
| 23 | | on her left arm. And she made the comment I'm going to |
| 24 | | write your names down. |
| 25 | | She reached in her purse, or pocketbook, and brought |

```
 1    out her wallet.  It was a long rectangular object I
 2    believe.  She held it in her hands and I made the
 3    comment well, as long as you've got that out why don't
 4    you get your driver's license out.  She hesitated, she
 5    was standing directly in front of Officer Dutton.
 6    I'm -- I -- well, she's at an angle.  If you'd be
 7    Officer Dutton, the window would be me.  She made the
 8    comment I'm an American citizen, I don't have to do
 9    this.  And she executed a clockwise right-hand spinning
10    turn, similar to what you see on a basketball court
11    when the player goes around the block.  We reacted
12    immediately -- sorry -- matter of fact, as long as
13    we're doing that I made a cardinal error and did not
14    turn off my cell phone.  I will do that at this time.  I
15    seen -- somehow we restrained her by taking -- grasping
16    her arms.  I believe the way it worked out I was -- I
17    had her left arm.  I'm not a hundred percent sure.
18    At that point her -- her mood, in my mind, passed from
19    what we call passive defense, where a person is just
20    not complying, to more of an active defense where she's
21    trying to get away from us.  The purse was in the hand
22    I believe that I had.  I grabbed the purse -- or the
23    wallet, I'm sorry.  Grabbed the wallet out of her hand.
24    I don't know what happened to the actual pocketbook.
25    It may have hit the floor, I'm not sure.  At that point
```

1   the struggle got significant and into what we call
2   aggressive resistance. Ms. Berman was trying to break
3   free of us. We put her hands behind her back and we
4   handcuffed her.
5   At that point she calmed down physically, however she
6   was still pretty -- during this whole time there's a
7   verbal diatribe of we're violating her rights, she's an
8   American citizen, this is all wrong, something to those
9   -- I don't recall the exact wording. But she was
10  vocalizing her displeasure with what was happening. At
11  that point I had her -- her wallet in her (sic) hand --
12  in my hand. I opened the wallet, removed her license.
13  I believe I put the wallet back in her pocket -- jacket
14  pocket and I kept the license. I -- once we got the
15  situation under control, I'm not sure whether I -- I
16  checked her driver's license status before or after we
17  put her in the police car. I don't recall that. But I
18  do recall her license came back as expired. From there
19  Rob and I had a bit of discussion as to how we're going
20  to proceed from here. I believe he talked to the -- to
21  some other folks that were there. I did not. We
22  elected to issue a cite and release on the charge of
23  resisting and we took Ms. Berman out of the car,
24  unhooked her and let her go on her way.
25  Q   Okay. Were you in radio contact with Officer Dutton

1       (Deposition Exhibit 1 marked)
2  (On record)
3       COURT REPORTER:  We're back on record and I
4  have marked this sketch by Officer Davis as Exhibit 1.
5  Q    Okay.  Officer Davis, I just want to make sure I have
6       the sequence correctly.  Your police report says we
7       indicated that -- she indicated that her ID was in it,
8       i.e., her wallet, but would not open it.  I took it
9       away from her, she struggled and we handcuffed her.  So
10      the sequence was you took her wallet away from her and
11      then you struggled?
12 A    Well, it's -- again, like I.....
13      MS. PINKEL:  I'm going to object because I
14 think you're mischaracterizing what he's testified to as to
15 what occurred before.
16      MR. PHARR:  Well, then he can straighten it
17 out.
18      MS. PINKEL:  Okay.
19 A    Okay.  What I was saying earlier is this thing was a
20      breathing entity.  It's constantly in motion.  What I
21      recall is her purse on her arm, her wallet in her left
22      hand, her right hand digging for something to write.
23      Her having refused to produce the ID that I just asked
24      again for.  Her wanting to write our names down.  When
25      she suddenly stops and says I'm an American citizen, I

| | | |
|---|---|---|
| 1 | | don't have to do this, executes the clockwise spin and |
| 2 | | starts to go around Officer Dutton and into the store. |
| 3 | | We go after her, we take her by the arms. At this |
| 4 | | point in time I pull the wallet out of her hand because |
| 5 | | I believe I have her left hand -- left arm and that's |
| 6 | | where the wallet was. Then she starts struggling a |
| 7 | | lot. Before it was passive resistance. She's just not |
| 8 | | moving. She's going to walk -- she went into defense |
| 9 | | in an approaching aggressive resistance when she |
| 10 | | started flailing. At that point in time we handcuffed |
| 11 | | her. My report is a synopsis, not a verbatim blow by |
| 12 | | blow of the events that happened. |
| 13 | Q | Okay. Now the -- are you sure there was a foyer there? |
| 14 | A | From what I recall there was. I haven't gone by the |
| 15 | | store to check. |
| 16 | Q | Okay. I'm given to understand that the store was |
| 17 | | remodeled since 2002 and there was no foyer there at |
| 18 | | that time? |
| 19 | A | Best of my recollection there was an entryway of some |
| 20 | | sort there. |
| 21 | Q | Okay. And can you again describe -- it says in your |
| 22 | | report disturbing the store so we decided to take her |
| 23 | | outside the store. Can you go through that again? |
| 24 | | MS. PINKEL: Why are you asking him to -- he's |
| 25 | already testified to this..... | |

1   MR. PHARR: I know.
2   MS. PINKEL: .....sequence of events.
3   MR. PHARR: And I'm asking him to.....
4   MS. PINKEL: Asked and answered.
5   MR. PHARR: With all due respect, counsel, you
6   asked the same question at least six to 10 different ways
7   yesterday. So I think that I can ask him to go through it
8   again.
9   MS. PINKEL: Well, that was a different matter.
10  That was the issue of the fact that your client is not claiming
11  any physical, mental or emotional damages in the case. This
12  is.....
13  MR. PHARR: I know. We spent an hour beating
14  that into the ground so I.....
15  MS. PINKEL: No.
16  MR. PHARR: .....think I can ask him to.....
17  MS. PINKEL: He's already answered.....
18  MR. PHARR: Okay.
19  MS. PINKEL: .....this question.
20  Q   Let me ask you this. Did they -- did you drag them out
21      of the store? Did you drag her out of the store?
22  A   No, we didn't drag. Well, define drag.
23  Q   How.....
24  MS. BERMAN: Can we just go off record for a
25  moment, please?

1    struggled and we handcuffed her, that was meant to --
2    you were describing a process -- you described as kind
3    of a fluid process?
4  A  It's a summation. You know, there's consistent verbal,
5    there's consistent physical. Her trying to leave, us
6    restraining her. The aspect of her needing to be
7    handcuffed was the result of the fact of I took the
8    wallet from her, she struggled, we handcuffed her.
9    It's just a summation. It's not a narrative of exact
10   events.
11        MR. PHARR: Okay. Thank you. No further
12 questions.
13        MS. PINKEL: Okay. I just have a few, just to
14 follow up on for clarification.

### CROSS EXAMINATION

16 BY MS. PINKEL:
17 Q  I just want to clarify something with you, Officer
18   Davis. At the time you removed Ms. Berman's wallet,
19   was it your understanding that you had already detained
20   her, is that correct?
21 A  Yes.
22 Q  Okay. Now, you -- your report says that you ran her ID
23   and her license had expired, is that correct?
24 A  Yes, that's correct.
25 Q  And what did you tell her to do based on the fact that

|    |   |                                                                                   |
|----|---|-----------------------------------------------------------------------------------|
| 1  |   | her license had expired, if you remember?                                         |
| 2  | A | I don't specifically recall.                                                      |
| 3  | Q | Okay. Do you think that the fact that ms. Berman had                              |
| 4  |   | an expired license played a role in her resistance to                             |
| 5  |   | producing her identification to you and Officer Dutton?                           |
| 6  |   | MR. PHARR: Objection, calls for speculation.                                      |
| 7  | Q | You can answer the question.                                                      |
| 8  | A | Okay. Yes, I -- yes, I do.                                                        |
| 9  | Q | Okay. Have you been -- how long have you been a police                            |
| 10 |   | officer?                                                                          |
| 11 | A | Just past 11 years now.                                                           |
| 12 | Q | Have you ever had any contact with lawyers in your work                           |
| 13 |   | as a police officer?                                                              |
| 14 | A | Yes, I have.                                                                      |
| 15 | Q | Were you surprised when you found out Ms. Berman was a                            |
| 16 |   | lawyer?                                                                           |
| 17 | A | Shocked.                                                                          |
| 18 | Q | And why were you shocked?                                                         |
| 19 | A | Normally I find attorneys very professional, very                                 |
| 20 |   | knowledgeable of the law. And while they may not agree                            |
| 21 |   | with what we're doing they have a strong sense of                                 |
| 22 |   | working with us and working through the problem as                                |
| 23 |   | opposed to bluntly opposing us.                                                   |
| 24 | Q | Okay. And in this instance was it your impression,                                |
| 25 |   | based on this incident, that she was bluntly opposed to                           |

1                what you and Officer Dutton were there to do?
2   A            Yes.
3   Q            Okay.  Now, Officer Dutton cited her for resisting an
4                officer?
5   A            Yes.
6   Q            Okay.  Did you agree with that citation?
7   A            At the time, yes.
8   Q            Okay.  And did you believe she had intentionally,
9                knowingly or recklessly delayed or obstructed Officer
10               Dutton's active investigation of a crime?
11  A            Yes.
12  Q            Okay.
13                    MS. PINKEL:  I have no further questions.
14  Okay.  I'm done.
15                    MR. PHARR:  Wait, wait.
16                         **REDIRECT EXAMINATION**
17  **BY MR. PHARR:**
18  Q            Did you tell her she was under arrest before you took
19               her wallet?
20  A            No.
21  Q            Did you ever tell her that if she didn't show ID she
22               would be arrested?
23  A            I don't -- I know I didn't say that.
24  Q            Did you hear Dutton say it?
25  A            I don't recall that.  It may have been said but I don't

1         recall it specifically.

2                    MR. PHARR:  Okay.  Thank you.

3                    COURT REPORTER:  All right.  We'll go off
4    record?

5                    MS. PINKEL:  One other question just to follow
6    upon what John just asked you.

7                         **RECROSS EXAMINATION**

8    BY MS. PINKEL:

9    Q         In your training is it true you don't have to tell
10             someone they're under arrest.....

11   A         That's correct.

12   Q         .....to -- for them to be under arrest?

13   A         That's correct.

14   Q         Okay.  Thank you.

15                   MR. PHARR:  Okay.  That's it.

16        (Off record)

17                       **(END OF PROCEEDINGS)**

18

19

20

21

22

23

24

25