Mary B. Pinkel
Assistant Municipal Attorney
Municipality of Anchorage Department of Law
Civil Division
P.O. Box 196650
Anchorage, Alaska  99519-6650
(907) 343-4545 (phone)
(907) 343-4550 (fax)
uslit@muni.org

Attorney for Defendants Anchorage
Police Department, Officer Robert Dutton,
And Sergeant Gil Davis

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JUDY L. BERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ANCHORAGE POLICE DEPARTMENT, | ) |
| OFFICER ROBERT DUTTON, and | ) |
| SGT. GIL DAVIS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

U.S. District Court Case No. 3:04-cv-227-TMB

## AFFIDAVIT OF GILBERT ("GIL")  DAVIS

Gilbert ("Gil") Davis being duly sworn upon oath deposes and states as follows:

1.      I am employed by the Anchorage Police Department as a police officer, a

position I have held from November 1994 to the present.  I am currently a sergeant in

the Detective Division.  I was promoted to sergeant in August 2000.

2.      As a police sergeant, my duties involve performing a wide range of police

services and a variety of tasks, including taking appropriate action when observing or being informed of matters requiring police attention. Anchorage Police officers maintain order, enforce codes and ordinances and protect life and property within the Municipality of Anchorage. My specific duties include criminal investigation; report writing; radio communication; traffic enforcement; patrolling and security.

3.      My duties of criminal investigation require that I conduct all types of criminal and non-criminal investigations, and confront and interview suspects and witnesses. In regard to my traffic enforcement duties, I am required to instruct and enforce traffic laws and ordinances by warnings, citation and/or arrest. In regard to my patrolling duties, I am required to patrol residential and commercial settings to reduce the incidence of crime and criminal activity within an assigned beat or area. My security duties include conducting visual and audio surveillance in a variety of circumstances and settings. These duties also include engaging in preventive security patrol of buildings and homes, responding to emergency and security alarms, and rendering aid to those in need.

4.      On April 6, 2002, I, along with Officer Robert Dutton, was assigned to an alcohol enforcement detail outside the liquor store next to the Carrs Huffman Grocery Store ("Carrs Huffman" or "Carrs") in Anchorage. The purpose of our enforcement work was to target under-age drinking. Officer Dutton was working from a marked police car in uniform. I was working "under cover." Officer Dutton and I were in radio contact.

Case No. 3:04-cv-227-TMB
Page 2 of 6

5.      At about 10:15 p.m., Officer Dutton and I decided to leave the liquor store at Carrs Huffman. I was leaving the parking lot I heard a long series of honking of a car horn. It was not a normal "beep beep" but a long series of loud honking. It was my impression, based on my training and experience as a police officer, that something was occurring which required my and Officer Dutton's attention. Officer Dutton turned back to return to the parking lot and I followed him.

6.      As I drove back into the parking lot, I observed Officer Dutton speaking with the driver of a small grey car. I then parked my car some distance away due to the fact that I was working "under cover." I then observed Officer Dutton speaking with a white female adult, whom I now know to be Ms. Judy Berman. Ms. Berman appeared to be waving her arms around and yelling, although I could not hear her.

7.      As I approached the store, it appeared that Ms. Berman was attempting to leave Officer Dutton, and that Officer Dutton was attempting to detain Ms. Berman. Officer Dutton then placed Ms. Berman in a "sleeve guide." I overheard Officer Dutton ask Ms. Berman for her identification. I heard Ms. Berman angrily tell Officer Dutton that she would not give him her identification. She told Officer Dutton that "This is the United States of America" and "I don't have to give my identification to you." She also told him that she was a lawyer. Ms. Berman kept yelling. Although I am not absolutely sure, it was my impression that Officer Dutton asked for her identification and her driver's license, and that he used both terms -- "driver's license" and "identification" -- in demanding identification from Ms. Berman.

8.      Under Alaska law, citizens are required to produce their driver's licenses to police officers upon their request.  In addition, in investigating crimes, whether traffic or otherwise, officers must obtain identification from suspects so that they can properly identify the suspect.

9.      I saw Officer Dutton pull out his wallet and tell Ms. Berman that he was showing her his identification, and that she must in turn now show him her identification.  (Although I was acting "under cover," my badge was hanging from my neck.)  I realized that Officer Dutton had a problem on his hands.  It was my duty as his back- up officer, to assist him.  The problem that I discerned was that Officer Dutton had a reason to ask for this woman's identification but for some reason she was refusing to provide it.  The reason he needed to see her identification or driver's license was two-fold.  First, her behavior earlier had appeared to potentially constitute disorderly conduct.  In addition, it was my understanding that she may have engaged in a traffic violation.  In my experience as a police officer, if a person refuses to produce a driver's license or identification, it is usually because they have something to hide.  For example, that person may have a revoked driver's license or may be wanted on an arrest warrant.  In this instance, my previous observations -- the series of loud horn honking earlier, the yelling and screaming on the part of Ms. Berman, and her apparent evasion of Officer Dutton --made me believe that this woman was potentially dangerous and could pose a threat to public health and safety.  Her refusal to provide identification further aroused my suspicions.  I indeed wondered if she had

other problems that made her a public safety threat -- e.g., domestic violence, a dangerous disposition or perhaps had a concealed weapon -- and I was therefore ready and available to assist Officer Dutton in any way I could.

10.    I then attempted to assist Officer Dutton by telling Ms. Berman that she needed to show us her license.  Ms. Berman then removed her wallet -- a rectangular object -- out of her purse, and held it in her hands.  I told her that as long as she had the wallet out, she should show us her driver's license.  She hesitated, and then made the comment:  "I'm an American citizen.  I don't have to do this."  She started to pull away from Officer Dutton and executed a clockwise right-hand spinning turn, similar to what one sees in a basketball game when a player goes around a "block."  In my mind, this action on Ms. Berman's part signified that she had gone from non-compliance with our commands to active resistance, and that she was in effect attempting to flee.

11.    Officer Dutton and I then restrained Ms. Berman by taking control of one arm each.  We placed both of Ms. Berman's arms behind her back.  We then placed her in handcuffs.  It was my understanding that we had detained Ms. Berman and that she was under arrest.  I snatched Ms. Berman's wallet out of her hands and removed her driver's license.  I returned her wallet to her coat pocket and kept the license to examine.  We then placed Ms. Berman in Officer Dutton's police vehicle.

12.    In examining Ms. Berman's license, Officer Dutton and I determined that it had expired the year before.  After we had placed Ms. Berman in the police vehicle,

we discussed her behavior and we decided to cite and release her for resisting an officer. However, we could have charged her for other crimes such as creating a disturbance; disorderly conduct; failing to produce her driver's license; and for driving with an expired license. However, Officer Dutton and I used our officers' discretion to merely cite Ms. Berman for resisting or interfering with an officer.

13.     I was later quite surprised to learn that Ms. Berman is a licensed attorney in this state. In my experience, lawyers tend to work with the police, even if they do not always agree with us. In this instance, Ms. Berman obstructed a very important goal of the police, which is to investigate crimes and protect the public.

Dated this 9th day of March, 2006.

By: _____
              Gil Davis

SUBSCRIBED AND SWORN to before me this 9th day of March, 2006.

_____
Notary Public in and for Alaska
My commission expires: 2-21-09



Affidavit of Gil Davis in Support of Motion for Summary Judgment
Case No. 3:04-cv-227-TMB
Page 6 of 6