Mary B. Pinkel
Assistant Municipal Attorney
Municipality of Anchorage Department of Law
Civil Division
P.O. Box 196650
Anchorage, Alaska  99519-6650
(907) 343-4545 (phone)
(907) 343-4550 (fax)
uslit@muni.org

Attorney for Defendants Anchorage
Police Department, Officer Robert Dutton,
And Sergeant Gil Davis

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| JUDY L. BERMAN, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ANCHORAGE POLICE DEPARTMENT, | ) |
| OFFICER ROBERT DUTTON, and | ) |
| SGT. GIL DAVIS, | ) |
| | ) |
|       Defendants. | ) |
| | ) |

U.S. District Court Case No. 3:04-cv-227-TMB

**OPPOSITION TO MOTION TO COMPEL**

**I. INTRODUCTION**

      In her motion to compel, the Plaintiff, Judy Berman, seeks to "compel" from the Anchorage Police Department three (3) categories of information:

    1.    complaints and disciplinary proceedings concerning both officers, and all documents

        related to the termination of Officer Dutton's employment[1];

2.     policies and procedures and training materials "regarding members of the public who decline to produce identification when requested to do so by a police officer;" and

3.     policies and procedures and training materials "regarding the proper action to take when a member of the public who is not suspected of criminal activity declines to produce identification when requested to do so by a police officer.

For the reasons outlined below, Defendants, the Anchorage Police Department, Robert Dutton and Gil Davis ("the Municipal Defendants"), through counsel, the Municipal Attorney, request that the court deny the Plaintiff's Motion to Compel. The Plaintiff's Motion lacks merit for several reasons.

    First, and most importantly, the A.P.D. and the Officers have raised the defense of qualified immunity in this lawsuit.[2] Until this threshold question of qualified immunity is resolved, the motion to compel should not even be considered. Secondly, none of the information requested is relevant to this lawsuit. Third, much of the information requested -- personnel, internal affairs, police policies and procedures -- is protected as "official information" that will not lead to the discovery of admissible evidence. The harm to the officers and to the Department in producing this information outweighs any interest the Plaintiff may have in seeking this information. Even a carefully crafted protective order concerning these officers' files and the policies, procedures and training materials would create a substantial risk of harm to the significant governmental interest in enforcing the law.

    Alternatively, if the court were to require more information from the department before it decides the motion to compel, the department can provide the requested information to the court for

---

[1] Officer Dutton left the APD in 2003 and now works for UPS. See, affidavit of Robert Dutton filed in support of motion for summary judgment.

an *in camera* inspection.  Finally, the issues raised in the Plaintiff's Motion to Compel may be rendered moot if the court grants the Municipal Defendants' Motion for Summary Judgment on the issue of Qualified Immunity.  The defendants therefore urge the court to consider that motion before it decides the Plaintiff's Motion to Compel.  This opposition is supported by the attached Affidavit of Captain Thomas Nelson and is accompanied by an Order.

**II.    ARGUMENT**

**A.  Discovery of this information should not be allowed until the threshold issue of qualified immunity has been resolved.**

In this case, the Municipal Defendants have pled the defense of qualified immunity for the actions of the officers with respect to Ms. Berman on April 6, 2002.  In addition, they have now moved for summary judgment on that issue.  "Once a defendant pleads a defense of qualified immunity, '[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred…Until this threshold immunity question is resolved, <u>discovery should not be allowed</u>.'" *Siegert v. Gilley,* 500 U.S. 226, 231(1991), referencing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). (Emphasis added).

"A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."  *Gilley, supra,* 500 U.S. 226, 232. "Decision of this purely legal question permits courts expeditiously to weed out suits which fail the

---

2  See, Answer and Affirmative Defenses filed on behalf of A.P.D.; Answer and Affirmative Defenses filed on behalf of Officers Dutton and Davis.  In addition, see Municipal Defendants' Motion for Summary Judgment dated March 13, 2006.

test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits." *Id.* "One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Id.*

Accordingly, the court should first consider the defendants' Motion for Summary Judgment on the issue of qualified immunity before it considers the Plaintiff's Motion to Compel. Since the purpose of the qualified immunity defense is to spare defendants not only unwarranted liability, but unwarranted demands customarily imposed in defending a lawsuit, the purposes of that defense would best be served here if the court were to refrain from ruling on the discovery motion until it decides the Defendants' Motion for Summary Judgment.

**B. The Plaintiff is not entitled to discovery of the selected personnel records of the Officers at issue.**

If the court were to consider the Motion to Compel at a later date, it would most likely agree with the Defendants that the employment-related information which the Plaintiff seeks is not relevant to this lawsuit. In her motion to compel, the Plaintiff fails to precisely state why she needs to see portions of the personnel records of Sergeant Davis and former patrol officer Dutton.[3] It therefore appears that the purpose of her request for these records is to annoy or embarrass the officers and the Department.

"Federal Rule of 26 (c) provides that a court may limit discovery to protect from annoyance, embarrassment, oppression, or undue burden or expense." *Sanchez v. City of Santa Ana,* 936 F.2d

---

3 The Plaintiff seeks "discovery of complaints and disciplinary proceedings involving Dutton and Davis and of information related to the termination of Dutton's employment." Officer

1027, 1033 (9th Cir. 1991). "Federal common law recognizes a qualified privilege for official information." *Id.,* referencing *Kerr v. United States Dist .Ct. for N.D. Cal.,* 511 F.2d 192, 198 (9th Cir. 1975), *aff'd* 426 U.S. 394, 96 S.Ct. 2119 (1976). "Government personnel files are considered official information." *Id.*, referencing *Zaustinsky v. University of Cal.,* 96 F.R.D. 622, 625 (N.D.Cal. 1983), *aff'd* 782 F.2d 1055 (9th Cir.1985). "To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages." *Id.* at 1034. "If the latter is greater, the privilege bars discovery." *Id.,* referencing *Jepsen v. Florida Bd. of Regents,* 610 F.2d 1379, 1384-85 (5th Cir.1980); *Zaustinsky,* 96 F.R.D. at 625.

**1. The personnel information which Plaintiff seeks is not relevant.**

In the present case, the portions of the personnel records which the plaintiff seeks to compel are not relevant to this lawsuit, and the Plaintiff fails to explain why she should have access to it. According to Captain Thomas Nelson, the Commander of the Anchorage Police Department Public and Internal Affairs Division, there is no record of an internal affairs investigation having been conducted in regard to the conduct of Officers Davis and Dutton for this incident. Affidavit of Thomas Nelson, paragraph 7. Normally, in the event that a citizen chooses to complain about an officer, the complaint will be referred to the officer's supervisor. Id. If the complaint is not resolved, it is referred to the I.A. unit. Id. Captain Nelson has reviewed APD files and can find no record of any complaints or investigations as a result of the incident of April 6, 2002, in which Ms. Berman was arrested after resisting Officers Dutton and Davis. Id. Therefore, the request for portions of personnel or internal affairs records seeks information which is not relevant.

---

Dutton left the Department in July, 2003 and now works for UPS. See, Affidavit of Robert

This case is therefore in contrast to the situation encountered by the court in *Segura v. Reno,* 116 F.R.D. 43 (D.Nevada 1987), where an internal affairs investigation had been conducted by a local police department over an incident which then led to a lawsuit. In that case, the court held that the fact summaries in an internal affairs report were relevant, and should be produced on that basis. *Id.* at 44. However, in the case at hand, no internal affairs investigation was held concerning this incident with Ms. Berman. Therefore, there is no basis to produce any employment-related records of either officer.

The Plaintiff may attempt to argue that the officers' files may contain other past incidents concerning these same officers. However, "this sort of 'past conduct' evidence is not admissible in federal courts, with very narrow exceptions." *Segura v. Reno, supra,* 116 F.R.D. at 44, referencing Fed. R. Evid. 404(b). "It further appears that the documents are not likely to lead to the discovery of admissible evidence." *Id.* "The liability of the individual police officer arises out of this particular incident." *Id.* "Evidence of other similar incidents could only show a propensity" for a particular course of conduct. *Id.* "This is the sort of 'conduct in conformity with character' evidence which Section [Evidence Rule] 404 (b) prohibits." *Id.*

**2. Privacy interests of the officers and "official function" of Officer Personnel files would be injured if the Plaintiff were given access to these selected portions of the officers' files.**

Even if relevant, the potential disadvantages of disclosure of the portions of the confidential personnel files of Officers Davis and Dutton which Plaintiff seeks far outweigh any benefit to Ms. Berman. The information is private and confidential under the Anchorage Municipal code, and state

---

Dutton filed in support of motion for summary judgment, paragraph 1.

and federal law. The Anchorage Municipal Code provides in pertinent part:

>AMC 3.30.016 B. *Access to Personnel Files*
>
>>1. Employees shall have access to their personnel files…Except as otherwise provided in this section, a personnel file shall be inspected by others only following presentation of written consent by the employee to whom that file pertains.
>
>AMC 3.30.016 D. *Records*
>
>>Notwithstanding chapter 3.90, all records maintained by the department of employee relations shall be confidential to the extent they include an <u>analysis, evaluation</u> or critique of an employee's performance, or their disclosure may reveal personal information about an employee or his dependents…or otherwise constitute an unwarranted invasion of privacy.
>
>
>AMC 3.90.040 *Exemptions for particular records*
>
>This chapter shall not be construed to require disclosure of:
>
>>A.   Personnel, payroll or medical files, equal rights commission files or other files which reveal the financial or medical status of any specific individual, the release of which would constitute an unwarranted invasion of privacy.
>>
>>O.   Any records or documents which are accorded confidential or privileged status by this Code or <u>which are accorded confidential status under state or federal law and which have been provided on a condition that the information retain its privileged or confidential nature</u>. (Emphasis added).[4]

Moreover, the Alaska Constitution provides special protection for personal privacy not found in the U.S. Constitution. Article 1, Section 22 states in pertinent part: "The right of the people to privacy is recognized and shall not be infringed." Thus, while state and municipal law are not dispositive, it is

---

4  In her motion, the Plaintiff suggests that the Municipal Defendants have waived the "official information" privilege provided for by federal common law. The Municipality has never waived this privilege. Moreover, the Municipality specifically referenced federal law as a basis for not producing employment related documents by referring to AMC 3.90.040 0 in its November 1, 2005 discovery responses. See Municipality's Response to Interrogatory No. 5, contained in Exhibit 4 to Plaintiff's Motion to Compel.

important to recognize the great weight that this state and municipality place on the privacy rights of individuals.

Further, since the officers' files are "official information," federal common law recognizes a qualified privilege for them. *Sanchez, supra,* 936 F.2d 1027, 1034 (9th Cir. 1991). While personnel files of police officers are not absolutely privileged, the confidential nature of these files suggests that opening the files to a plaintiff for a general search could reach well beyond the legitimate inquiries necessary to the litigation and would impact disciplinary proceedings within a department. *Id.* at 1034. In *Sanchez,* the Ninth Circuit held that Hispanic police officers who had brought a civil rights action against city police officials and a city were not entitled to see the personnel files of the city police department. The court found that even though the information contained in those files was relevant, the court would not order its release due to the confidential nature of the files and due to the fact that most of the relevant information could have been developed by interrogatories. *Id.* at 1034.

In contrast to the *Sanchez* case, the information that Berman seeks in this case is not relevant to the lawsuit. No internal affairs investigation was done as a result of the incident on April 6, 2002 which led to this lawsuit. Affidavit of Captain Thomas Nelson, para. 7. In addition, the A.P.D. has consistently maintained the confidentiality of these kinds of records. Id, paragraph 6. Accordingly, there is no justification for the release of these records to Ms. Berman.

Furthermore, the privacy of employees' personnel and internal affairs files is of the utmost importance to the Department. Affidavit of Thomas Nelson, para. 8. Law enforcement, by its nature, exposes officers to hazards different in kind and degree from those hazards which other workers face. Id. Officers frequently deal with angry citizens and people who break the law. Id. Most

officers have, at some point in their careers, received threats of retaliation from individuals that they have arrested. Id. some of those individuals use violence and even deliberately seek retribution. Id. Even disclosure of the requested information under a carefully crafted protective order would create a substantial risk of harm to significant governmental and privacy interests, as it would undermine the A.P.D.'s interest in keeping confidential its internal affairs files and in preserving the integrity of its investigations. Id.

The careful enforcement work of the detectives and patrol officers would be obstructed if individuals like Ms. Berman are allowed access to an officer's or former officer's files. Affidavit of Thomas Nelson, para. 9. For example, officers may in the future hesitate to stop and detain people like Ms. Berman for fear they will be retaliated against, not only by a future questionable lawsuit by that individual, but by a discovery process which could allow individuals like Ms. Berman to gain access to the officers' confidential files. Id. Therefore, even a carefully crafted protective order would create a substantial risk of harm to the A.P.D.'s significant governmental interest in law enforcement and to the privacy interests of Sergeant Davis, former Officer Dutton and other patrol officers who must handle potentially explosive situations like the one encountered here. Id.

In contrast, the disadvantage to Ms. Berman in non-disclosure would be minimal. At issue in this case is whether Officers Davis and Dutton violated her rights on April 6, 2002 when they sought to investigate her actions in creating a disturbance in the parking lot at the Carrs Huffman Grocery Store. She has failed to establish that the contents of the portions of these officers' personnel files are of relevance to her claims. For that reason, the court should deny her access to these files.

The Plaintiff references several California District Court cases as support for her argument that she should be able to have access to these files: *Hampton v. City of San Diego,* 147 F.R.D. 227

(S.D. Cal. 1993); *Soto v. City of Concord,* 162 F.R.D. 603; and *Ramirez v. County of Los Angeles,* 231 F.R.D. 407 (C.D. Cal. 2005). However, those cases are distinguishable from this case. For example, in *Soto,* the internal affairs records sought contained information about the incident which led to the lawsuit:

> The request for internal investigation documents is not overbroad as to subject matter or time, because <u>Plaintiff is requesting only those documents that concern the specific incident in the complaint</u>.

*Soto, supra,* at 610. (emphasis added). In contrast, in this case, the internal affairs files do not contain any information about the incident that led to this lawsuit. See, Affidavit of Thomas Nelson. In addition, while the court in *Soto* did determine that certain personnel files were discoverable, it was only after an *in camera* review and a finding of relevance. In the instant case, the Plaintiff has not established that the information she requests from the personnel files of Officers Dutton and Davis bears any relevance to this case.

      **C.**    **The Plaintiff's request for discovery of police procedures regarding "members of the public who are not suspected of unlawful activity" requests non-relevant information.**

The Plaintiff next argues that the court should grant her motion to compel because the Municipality did not satisfactorily answer her requests for production which requested that the Municipality produce policies and procedures and training materials concerning requesting to see identification from members of the public "who are not suspected of unlawful activity." See, Requests for Production No. 5, 7, 8 and 10. As the undisputed facts establish, Ms. Berman was stopped and questioned because she was suspected of unlawful activity -- illegally honking her horn

and creating a disturbance. Affidavit of Captain Thomas Nelson, paragraph 10.[5] Accordingly, these requests for production do not seek relevant information because Ms. Berman was suspected of unlawful activity. The court should therefore deny the Plaintiff's request to see such documents on the basis that they are not relevant.

   **D.   The Plaintiff is not entitled to discovery of policies and procedures and training materials regarding "members of the public who decline to produce identification when requested to do so by a police officer."**

The third category of information sought by Plaintiff is policies and procedures and training materials concerning "members of the public who decline to produce identification when requested to do so by a police officer." Despite the fact that these requests were overly-broad, vague, confusing, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, the Department made every attempt to appropriately respond to these requests in its November 1, 2005 written discovery responses. See, exhibit 5 to the Plaintiff's Motion to Compel.[6]

Ms. Berman essentially argues that she is entitled to see the departmental policies on "requesting identification from members of the public" because, in her opinion, Officer Dutton had no basis to stop her, and both Officers, Dutton and Davis, had no basis to arrest and use restraint on her. However, despite the fact that both officers have now been deposed, Ms. Berman continues to fail to acknowledge that her series of behaviors -- starting with her harassment of the Chens and continuing with her resistance to Officer Dutton's and eventually Officer Davis's attempts to

---

[5] In addition, see affidavits of Chih and Sharon Chen, Robert Dutton and Gil Davis filed in support of Motion for Summary Judgment.

[6] Specifically, the Department has already referred Ms. Berman to AS 28.15.131, which requires members of the public to produce their drivers' licenses to the police upon demand. See,

investigate her conduct -- required that the Officers react in the manner that they reacted. In this particular instance, both officers acted appropriately and went out of their way to treat Ms. Berman fairly. Affidavit of Thomas Nelson, para. 9.[7]

Since Ms. Berman was stopped based on a reasonable suspicion that she had violated the law and was then later arrested based on probable cause that she had resisted the officers, it is the traffic enforcement and arrest procedures which would discuss requesting identification from members of the public. Affidavit of Thomas Nelson, para. 10. However, A.P.D. maintains the confidentiality of those policies and procedures concerning arrests. Id. In addition, there are no training materials that exclusively deal with "requesting identification from the public," as those materials would be subsumed under arrest or traffic enforcement training materials. Id.

However, the governmental interest in enforcement of the law could be undermined if the APD were required to turn its policies and procedures or training materials on arrest or traffic enforcement to Ms. Berman, a lawyer who clearly showed a lack of respect for the police, the law, and for her fellow citizens throughout the incident that led to this lawsuit. Id., paragraph 11. Even a carefully crafted protective order concerning these policies would create a substantial risk of harm to the significant governmental interest of the Department in enforcing the law. Id. The Department does not want individuals who violate the law and then deliberately obstruct its enforcement efforts to have copies of its policies and procedures concerning arrest. Id. Such individuals could then obstruct the Department's enforcement efforts in the future. Id.

---

Affidavit of Captain Thomas Nelson, para. 9, and exhibits 2 and 5 to the Plaintiff's Motion to compel.
7  See, also affidavits of Chih and Sharon Chen, Gil Davis, Robert Dutton and John Daily, filed in support of the Defendants' Motion for Summary Judgment.

The Plaintiff erroneously relies upon *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018 (1978), as support for her argument that she is entitled to discover the police practices concerning requesting identification from members of the public. However, this case has no similarity to *Monell,* a 1983 action filed by a group of women employees who challenged a New York City policy that required pregnant employees to take unpaid leaves of absence before those leaves were medically required. Unlike the plaintiffs in *Monell*, the Plaintiff in this case has not alleged in her complaint that department custom or practices have caused her a "constitutional deprivation." Thus, any suggestion that such a claim is relevant to her case against the Department is incorrect. Indeed, the Plaintiff has never alleged a specific claim against the Department itself, and has never put the Municipal Defendants on notice that it has specific claims against the Department. See, Complaint.[8]

### III.     CONCLUSION

For the reasons outlined above, the Municipal Defendants request that the court deny the Plaintiff's Motion to Compel. Discovery of this information should not even be considered by the court until the threshold question of qualified immunity has been resolved. Secondly, if the court were to consider the Plaintiff's Motion to Compel at a later date, it should deny that motion since the information the Plaintiff seeks is not relevant to this lawsuit. Furthermore, the information requested is protected as "official information" and will not lead to the discovery of admissible evidence. The harm to the officers and to the Department in producing this information outweighs any interest the Plaintiff may have in seeking this information. Even a carefully crafted protective order concerning

---

8  The Municipality discusses this issue in its motion for summary judgment.

these officers' files and the police policies and procedures would create a substantial risk of harm to the significant governmental interest in enforcing the law.

Alternatively, if the court were to require more information from the Department before it decides the motion to compel, the Department can provide the requested information to the court for an *in camera* inspection. Finally, the issues raised in the Plaintiff's Motion to Compel may be rendered moot if the court grants the Municipality's Motion for Summary Judgment on the issue of Qualified Immunity. The Municipality therefore urges the court to review its Motion for Summary Judgment before the court decides the Plaintiff's Motion to Compel.

Respectfully submitted this 13th day of March, 2006.

FREDERICK H. BONESS
Municipal Attorney

By: s/ Mary B. Pinkel
    Municipal Attorney's Office
    P.O. Box 196650
    Anchorage, Alaska 99519-6650
    Phone: (907) 343-4545
    Fax: (907) 343-4550
    E-mail: uslit@muni.org
    Alaska Bar No. 8505030

The undersigned hereby certifies that on 03/13/06 a true and correct copy of the *Opposition to Motion to Compel and Affidavit of Thomas Nelson* was served on:

- John Pharr
- Judy Berman

by first class regular mail, if noted above, or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.
 s/Sheri Curro
Sheri Curro, Legal Secretary
Municipal Attorney's Office