Karen E. Bretz
Attorney at Law
P.O. Box 91457
Anchorage, AK 99509
(907) 277-5847 Voice
(907) 277-5848 Facsimile

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JUDY L. BERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ANCHORAGE POLICE DEPT., | ) |
| OFC. ROBERT DUTTON, and | ) |
| SGT. GIL DAVIS, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Case No.  A04-0227 CV (TMB)

**OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON QUALIFIED IMMUNITY**

The plaintiff, Judy L. Berman, by and through her counsel of record, hereby files her opposition to the defendants' motion for summary judgment.  The plaintiff's opposition is also supported by the affidavit and exhibits filed herewith.

In their motion, the defendants correctly state that summary judgment for the defendants is only appropriate if there are no material factual issues, and if defendants are entitled to judgment as a matter of law, when the evidence is viewed in the light most favorable to the plaintiff.  They

then proceed, however, to present the facts in the light most favorable to the *defendants,* and to resolve all factual issues in favor of the defendants.

The defendants have not made out a *prima facie* case of absence of factual issues, and entitlement to summary judgment. Therefore the burden has not shifted to the plaintiff to prove the existence of factual issues. "The defendant's burden is to demonstrate the absence of a genuine issue of material fact." *Moreno v. Baca,* 431 F.3d 633, 638 (Ninth Cir. 2005). Nonetheless, the plaintiff will prove that there are material factual issues that preclude an entry of summary judgment in the defendants' favor.

**1. The defendants are not entitled to summary judgment because there are genuine issues as to material facts.**

FRCP 56(c) provides the summary judgment shall be granted when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." The following are some of the material factual issues in this case which, if ultimately resolved in the plaintiff's favor, would result in judgment in favor of the plaintiff, rather than the defendant:

a. Before Dutton initially approached her, did the plaintiff do or say anything from which Dutton could reasonably conclude that there was imminent public danger?[1]

b. Did Dutton make the statement, "If you do it again, I'll find it in my heart to cite you," before the plaintiff wished him a great night and walked away?

c. Before the plaintiff walked away from Dutton, did he do or say anything to indicate

---

[1] The major factual dispute with regard to the plaintiff's conduct before Dutton approached her is whether she was "screaming". But this factual issue may not be <u>material</u>, since screaming "something about a parking space" (which is what Dutton said he heard, in his response to interrogatories) could not reasonably be interpreted to signify imminent public danger; especially when taken together with the fact that Dutton says he found the plaintiff sitting in her car after the other party had entered the store. The plaintiff has argued in a separate motion that the investigatory stop was unconstitutional as a matter of law, even if this factual issue is resolved in the defendants' favor.

that he had not finished talking to her, or that she was not free to go?

d. Was the plaintiff in the process of complying with the officers' request for identification, when Davis grabbed her wallet out of her hands, and the officers proceeded to handcuff and arrest her?

**2. The Officers are not entitled to immunity if the evidence is viewed in light most favorable to the plaintiff.**

Police officers are entitled to qualified immunity if, when the facts are viewed in the light most favorable to the plaintiff, the officer could have reasonably believed that he was <u>not</u> violating the plaintiff's constitutional rights. *Saucier v. Katz,* 533 U.S. 194, 201-202 (2001). " 'The ordinary framework for deciding motions for summary judgment' applies to motions for summary judgment based on official immunity." *Moreno v. Baca,* 431 F.3d 633, 638 (Ninth Cir. 2005).

The threshold question when considering the issue of qualified immunity is, "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, citing *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). If there has been a constitutional violation, the next question is whether the right was "clearly established". *Saucier* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier* at 202. Thus, police officers are only entitled to qualified immunity if, viewing the facts in the light most favorable to the plaintiff, a reasonable officer in the defendant officer's position could reasonably have believed that his conduct did not violate the plaintiff's constitutional rights. The defendants concur that the is the standard for determining if qualified immunity applies. (See Defendants' Motion for Summary Judgment, Docket 69, p.18.)

As discussed below, when the facts are viewed in the light most favorable to the plaintiff, it is clear that a reasonable officer in the defendants' position would have known that he was violating the plaintiff's constitutional rights. Therefore the defendants are not entitled to summary judgment under the doctrine of qualified immunity.

**a. The plaintiff's claims of violation of constitutional rights under 42 U.S.C.§ 1983.**

The plaintiff claims that Dutton and Davis committed violations of her rights under the Alaska and United States constitutions. The most serious violation of her right to be free from unreasonable search and seizure occurred when the officers seized her person by handcuffing and arresting her when she was in fact complying with their request for identification.

The plaintiff maintains that after Dutton had made it clear to her that she was free to go, and after she had in fact walked some distance towards the store entrance, he came after her and said "Hey, I want to see your ID." She declined to produce identification and continued walking toward the entrance. At the entrance to the store Davis joined Dutton, and they took hold of the plaintiff's arms in an extremely tight grip. They made it clear that they would not let go of her until she produced identification. It was not until she agreed to produce identification that they loosened their grip on her just enough to allow her to remove her wallet from her purse. She was holding her wallet in her hands, looking for her driver's license, with both officers still surrounding her and holding her arms, when Davis suddenly grabbed the wallet out of her hands and the officers proceeded to handcuff her. (See Affidavit of Judy L. Berman)

A reasonable officer in this situation could not have possibly thought that his conduct was lawful. Obviously the reasonable and lawful manner in which to proceed would have been to allow the plaintiff to produce her identification. The plaintiff adamantly denies that she resisted

the officers. (Affidavit of Plaintiff). The only possible explanation for the officers' bizarre and explosive behavior is that they "lost it" when she made statements questioning their conduct and indicating that she would sue them. (Affidavit of Plaintiff). However, the police have no right to seize and individual just because they don't like what she is saying. The officers knew that they were violating clearly established rules when they arrested her even though she was complying with their request for identification. Therefore they are not entitled to qualified immunity.

Sgt. Davis also violated the plaintiff's rights under the Fourth Amendment and under Article I Section 14 of the Alaska Constitution when he unlawfully seized her wallet and searched through it without her permission. Davis himself initially admitted that he took the plaintiff's wallet away from her before he had decided to arrest her ("She had her purse in her hands. She indicated that her ID was in it but would not open it. I took it away from her, she struggled and we handcuffed her. I took her ID from the purse in her view and put it in her jacket pocket." Davis Police Report). The plaintiff has argued in a separate motion that the search was unlawful even if the facts are viewed in the light most favorable to the defendants.

For the purposes of determining qualified immuntiy, however, the facts are viewed in the light most favorable to the plaintiff. The plaintiff maintains that she was complying with the officers' request for identification when Davis grabbed the wallet out of her hands. (Affidavit of Plaintiff.) Therefore the seizure of her wallet could not possibly fall into any of the categories of exceptions to the prohibition against searches and seizures without a warrant. Likewise the search of her wallet without a warrant was also plainly unlawful. Warrantless searches are per se unreasonable unless they fall within one of "well-delineated exceptions" to the warrant requirement. *State v. Blank,* 90 P.3d 156, 160 (Alaska 2004). The defendants' argument that the search was justified, because the plaintiff was already under arrest, fails because it assumes facts

asserted by the defendants and denied by the plaintiff. As noted above, the arrest itself was unlawful because the plaintiff was in fact complying with the officers at the time of the arrest, not resisting. The plaintiff also maintains that the wallet was actually taken from her before the arrest.[2]

The plaintiff's right to be free from unreasonable search and seizure was also violated when Dutton initially seized her by conducting an improper investigative stop. An investigative stop is in fact a "seizure" of the person. *Terry v. Ohio*, 392 U.S. 1, 16 (1968). In Alaska, a police officer may only conduct an investigative stop if there is a reasonable basis for believing that serious harm to persons or property has just occurred or that there is imminent public danger. *Coleman v. State* 553 P.2d 40, 43 (Alaska 1976); *Ebona v. State,* 577 P.2d 698, 700 (Alaska 1978).

The defendants' attempt to charactarize the plaintiff as someone whom they could reasonably believe was dangerous is simply not supported by the facts, and certainly not by the plaintiff's account of the facts. The plaintiff states she was surprised when the Chens parked in the space that she had obviously been waiting for with her turn signal on. She sounded her vehicle horn a few times. (Plaintiff's Affidavit). The defendants state several times in their motion that the plaintiff testified to being "angry" at the Chens (e.g. Docket 69 p.22), when in fact she has always denied that she was upset or angry. The defendants' attorney also deliberately mischaraterizes the plaintiff's deposition testimony when she states that the plaintiff sounded her horn "at least" four or five times (Docket 69 p.13). The plaintiff in fact stated it was about four or five times. (Berman deposition p. 33). This conduct certainly in no way indicated that the plaintiff presented

---

[2] The plaintiff has argued in another motion that the search was unlawful, as a "search incident to arrest" even if the defendants version of events is accepted, and even if the arrest had been lawful

any kind of danger.  Based on the plaintiff's account of events Dutton would have heard a vehicle horn sounding for a total of less than ten seconds, possibly less than five.  By the time Dutton approached her, the plaintiff had parked her vehicle and the other party had entered the store without incident. (Dutton police report; Dutton deposition p. 12).

The Chens' affidavits claiming to have been intimidated by the plaintiff's conduct are irrelevant to the issue of qualified immunity, and irrelevant to the claims raised by the plaintiff in this action.  Officer Dutton decided to approach the plaintiff based on his own observations; he was not responding to a request for assistance from the Chens.  The fact that the Chens are now stating that they were fearful was not known to the officers at the time they contacted the plaintiff.[3]  Whether there was a reasonable basis for Dutton to stop the plaintiff must be judged on the basis of the "facts and circumstances then known to him." *Moreno v. Baca,* 431 F.3d 633, 639 (Ninth Cir. 2005); *Cert. denied by Baca v. Moreno,* 2006 U.S. LEXIS 4716 (June 19, 2006).

According to the plaintiff, all she had done was sound her horn a few times, and mouth to the Chens as they passed by her car, "That was really rude." (Plaintiff's Affidavit).  Therefore all Dutton heard was a horn sounding a few times, and all he saw was Mr. Chen parking his vehicle, the plaintiff parking hers, and the Chens entering the store.  Based on those observations, it is impossible to find that the officers had a reasonable belief that imminent public danger existed.  In *Baca v. Moreno, Supra*, the Ninth Circuit Court specifically rejected the argument that circumstances unknown to the officer at the time he stopped an individual could "retroactively" justify the stop, and affirmed the District Court's denial of summary judgment based on qualified

---

[3] The plaintiff also notes that Dutton's police report on his interview with the Chens shortly after the plaintiff had been released, makes no mention of them saying they were fearful of the plaintiff.  He also stated in his deposition at p.11 that he did not observe the Chens acting nervous or looking back at the plaintiff as they walked toward the store entrance.  The plaintiff adamantly denies that she did anything that could reasonably have caused them to be fearful.

immunity. *Id. at 638-639, 643.* And, again, the plaintiff disputes that she was screaming or doing anything in any way threatening. (Plaintiff's Affidavit).

The plaintiff's constitutional right to be free of unreasonable search and seizure was also violated when the officers surrounded her at the store entrance and each grabbed a hold of one of her arms. As discussed above, Dutton's initial stop of the plaintiff was improper. But regardless of whether Dutton could have properly stopped the plaintiff initially, this second stop was clearly improper, when the plaintiff's account of the facts is accepted. According to the plaintiff, Dutton clearly indicated that he did not intend to take any action, and he did not protest in any way when she began walking away. (Affidavit of Plaintiff.) He therefore had no basis to initiate a second investigative stop, and both officers had no right to physically detain the plaintiff by force, when she declined to stop.

The defendants mistakenly rely on AS 28.15.131 and AMC 9.12.030 support their assertion that the plaintiff was in fact required to produce identification at the request of a police officer. The state statute and municipal ordinance are licensing statutes, which allow the police to ask for driver's licenses in a traffic stop, in order to determine if someone is licensed to operate a motor vehicle. The Alaska Supreme Court has specifically held that "a licensing statute cannot be used for the purpose of finding out who a defendant is, where he has been, or where he is going. In other words, a licensing statute cannot be used as a means for obtaining information or evidence not related to the licensing requirement." *Schraff v. State*, 544 P.2d 834, 839 (Alaska 1975). There is no dispute that Dutton wanted the plaintiff's ID or license in order to determine her identity, not to find out if she was licensed to drive. (See police report; Dutton deposition p. 33).

The plaintiff also notes that the affidavit of John Daily, filed by the defendants to support

their motion, closely follows his previously submitted report, which the Court found to be "an entirely one-sided opinion on the behavior of these officers, based solely on information provided by the officers themselves." Order at Docket 84.

Based upon the above, there were at least four points at which the officers violated the plaintiff's right to be free of unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Article I § 14 of the Alaska Constitution.

The defendants imply that because the plaintiff did not sustain extremely serious physical injuries at their hands, her claims are somehow questionable. But as the court stated in *Terry v. Ohio,* 392 U.S. 1 (1968), when the police physically restrain a person's freedom and search their property without consent, "It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." *Id.* at 17. "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Moreno v. Baca,* 431 F.3d 633, 641 (Ninth Cir. 2005), citing *Terry* at 9, quoting *Union Pac. Ry. v. Botsford,* 141 U.S. 250, 251 (1891). The fact that, in this case, the officers' actions were undertaken out of malicious and hostile feelings toward the plaintiff, makes their conduct especially egregious.

    **b. The plaintiff's claim of false arrest.**

The elements of a claim of false arrest are: (1) a restraint upon the plaintiff's freedom (2) without proper legal authority. *Waskey v. Municipality of Anchorage,* 909 P.2d 342, 345 (Alaska 1996).

The handcuffing and arrest of the plaintiff were clearly a restraint upon her freedom. As discussed above, the officers were acting without proper legal authority since the plaintiff was in

fact complying with their request for identification. The officers also falsely arrested the plaintiff at the point at which they first surrounded her and took hold of her arms, since, as also discussed above, they were also acting without proper legal authority at that point. A reasonable officer in the defendants' position would have known that he was restraining the plaintiff's freedom without proper legal authority. The defendants are therefore not entitled to qualified immunity on the claim of false arrest.

### c. The plaintiff's claim of assault and battery.

A person is liable for assault and battery if he acts intending to cause a harmful or offensive contact with the person of another. Malice, hostility, or intent to cause physical injury are not required. *Lowdermilk v. Lowdermilk,* 825 P.2d 874, 879 (Alaska 1992); *Merrill v. Faltin,* 430 P.2d 913, 917 (Alaska 1967).

It is undisputed in this case that the defendant officers grabbed the plaintiff by the arms as she was walking toward the entrance of a grocery store, and that shortly thereafter they handcuffed her arms behind her back. For two men to grab the plaintiff by the arms and subsequently handcuff her is certainly a harmful and offensive contact. Since the men in question were in fact police officers, however, their actions would not amount to assault if they had the legal authority to seize the plaintiff. As discussed above, the officers did not have the right to arrest the plaintiff, because they knew that she was complying with their request for identification. They also did not have the right to grab her by the arms and inflict bruises, prior to the arrest, since the initial investigative stop by Dutton was improper, and, in any event, that stop had already concluded with Dutton telling the plaintiff he would take no action, and allowing the plaintiff to walk away. The officers clearly acted with the intent to cause harmful or offensive physical contact; they have not alleged that their actions were unintentional or accidental. Based

upon the plaintiff's account of the incident, the officers should have known that they were acting without legal authority. The officers are not entitled to qualified immunity on the claim of assault an battery.

### d. The plaintiff's claim of malicious prosecution.

The elements of a malicious prosecution claim are: (1) malice, (2) want of probable cause, and (3) termination of the proceeding in favor of the plaintiff. *Industrial Power v. Western Modular Corp.,* 623 P.2d 291, 299 (Alaska 1981).

In this case, there is no dispute that the proceeding was terminated in favor of the Plaintiff; the defendants concede that the Muncipal Prosecutor declined prosecution of the case. Under the facts as stated by the plaintiff, there was indeed a lack of probable cause for her arrest as she was in fact complying with the officers' request for identification at the time she was arrested. The facts as stated by the plaintiff also show malicious intent on the part of the officers in arresting, issuing a citation and making out a sworn complaint. She maintains that the officers became enraged when she made statements critical of their actions up to that point, and stated that she would sue them. For Davis to grab the plaintiff's wallet out of her hands when she was in the process of complying with the request for identification, and for both officers to then handcuff and arrest her, because her statements angered them, certainly shows malicious intent. Furthermore, the mere fact that the officers arrested her, knowing that she was not resisting, but rather complying with their request, is sufficient to show malice. "In the law of malicious prosecution, [malice] means that the prosecution was instituted primarily because of a puroose other than bringing an offender to justice." Black's Law Dictionary, Fifth Edition at 862.

Based upon the officers' conduct asserted by the plaintiff, the officers are not entitled to qualified immunity on the claim of malicious prosecution.

### e. Liability of the Anchorage Police Department.

The defendants argue that there is no liability on the part of the Department because no Constitutional violation has occurred, in that Dutton and Davis did not violate any of the plaintiff's Constitutional rights. Docket 69 p. 35-36. However, the officers did in fact violate the plaintiff's Constitutional rights, as discussed above.

The Department may be liable under 42 U.S.C. § 1983 if the officers were following an official custom, policy or procedure when they violated the plaintiff's Constitutional rights. *Monnell v. Department of Social Services,* 436 U.S. 658, 690-691 (1978). Since the Department has thus far refused to provide discovery on this subject, it is unknown at this time whether that is the case. The Department may have also failed to provide proper training and supervision, or failed to take proper remedial action after similar incidents of misconduct.

Even if the Department turns out not to be liable for the plaintiff's claims of civil rights violations under Federal law, it is still liable for the claims of misconduct of its employees, brought under State law. *See City of Nome v. Ailak,* 570 P.2d 162 (Alaska 1977). The Department, as well as the defendant officers, may be held liable for the plaintiff's claims of assualt and battery, false arrest and malicious prosecution.

### f. The plaintiff's claim for punitive damages.

The defendants argue that, "Because the Plaintiff's main claims for false arrest, assault and battery, malicious prosecution and violation of civil rights have no merit, it therefore follows that the Plaintiff's claim for punitive damages should be dismissed as well." Docket 69, p. 36-38. However, this argument fails because, as discussed above, the plaintiff's claims do indeed have merit.

The plaintiff has maintained that the defendants' conduct was outrageous, and was

undertaken out of malice, and with reckless indifference to her rights and interests. She further notes that the conduct was especially outrageous, because the officers abused their authority as police officers when they arrested and handcuffed her because they were angry at her. "[I]n order to recover punitive damages 'the plaintiff must prove that the wrongdoer's conduct was "outrageous, such as acts done with malice or bad motives or a reckless indifference to the interests of another" Actual malice need not be proved.' " (Citations omitted) *Hayes v. Xerox Corp.* 718 P.2d 929, 934 (Alaska 1986). The plaintiff is entitled to present her claim for punitive damages to the jury.

### 3. Conclusion

Based upon the foregoing, the plaintiff respectfully requests that the defendants' motion for summary judgment be denied.

DATED this 3rd day of July, 2006.

s/ Karen E. Bretz_____
Karen E. Bretz
Attorney at Law
P.O. Box 91457
Anchorage, AK 99509
(907) 277-5847 Voice
(907) 277-5848 Facsimile
e-mail: kbretz@alaska.net
Alaska Bar No. 9911058

Certificate of Service

I certify that on the 3rd day of July, 2006 a true and correct copy of the foregoing document was served electronically on:
    Mary Pinkel
    Assistant Municipal Attorney

s/ Karen E. Bretz