Karen E. Bretz
Attorney at Law
P.O. Box 91457
Anchorage, AK 99509
(907) 277-5847 Voice
(907) 277-5848 Facsimile

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JUDY L. BERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ANCHORAGE POLICE DEPT., | ) |
| OFC. ROBERT DUTTON, and | ) |
| SGT. GIL DAVIS, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Case No.  A04-0227 CV (TMB)

## REPLY TO OPPOSITION TO MOTION TO COMPEL

The plaintiff, Judy L. Berman, by and through counsel, hereby files her reply to the defendants' opposition to her Motion to Compel.

**1. Information regarding Police procedures and officer training is relevant.**

In her discovery requests to defendant Anchorage Police Department, the plaintiff requested documents regarding certain Department policies and procedures, as well as officer training. This information is clearly relevant to the plaintiff's claims. Whether or not the officers

followed proper procedure is obviously an important issue in this case.

The defendants are certainly aware of the importance of this information, as they are proposing to present expert testimony on this very issue. It defies comprehension that the defendants actually claim that this information is not discoverable, while at the same time proffering expert testimony regarding police policies and procedures.

The plaintiff previously filed a motion to exclude the testimony of the defendants' proposed expert, John Daily, based on the fact that his opinion is based upon facts that are in dispute, and on the fact that his report makes no reference to police policy and procedure, and only contains an application of his understanding of the law to one version of the facts. In its Order dated May 23, 2006, this Court agreed that, "The role of the expert here is, ostensibly, to testify as to 'proper APD procedures and training,' but his written report is an entirely one-sided opinion on the behavior of these officers, based solely on information provided by the officers themselves." Docket 84 p.5. The Court ordered that Officer Daily "will be permitted to testify as to police training and proper police procedures . . .," and also noted that, "The jury is responsible for evaluating the credibility of the witnesses and determining the facts." Docket 84 p.6.

In light of the Court's order on this issue, the defendants cannot continue to maintain that information regarding police training and procedure is not relevant and discoverable.

The procedures and training materials requested by the plaintiff concern the proper conduct and procedures in stopping citizens and requesting their identification.[1] In their opposition, the defendants raise a number of specific objections to these requests, but their objections are without merit. The defendants complain that the request for "procedures for

---

[1] In their Opposition, Docket 70 p.2 the defendants mischaracterize the information on policies, procedures and training sought by the plaintiff. See plaintiff's RFP Nos. 5-7 and 8-10, filed with the plaintiff's motion to compel.

REPLY TO OPPOSITION TO MOTION TO COMPEL
CASE NO. A04-0227 CV (TMB); PAGE 2 OF 17

requesting identification from members of the public who are not suspected of unlawful activity" is not relevant to the facts of this case. However, the full text of RFP No. 5 reads: " Please produce copies of all Anchorage Police Department policies and procedures regarding requesting identification from members of the public, <u>and</u> procedures for requesting identification from members of the public who are not suspected of unlawful activity." (Emphasis added.) So clearly the request is <u>not</u> limited to procedures involving citizens who are not suspected of unlawful acts. Furthermore the plaintiff does believe that she is entitled to information regarding departmental procedures for stopping and requesting identification where there is no suspicion that a crime has been committed. This information is arguably relevant since by Officer Dutton's own admission, he had no intention of arresting the plaintiff at the time he asked for identification. (Dutton deposition p. 24, filed with plaintiff's motion for summary judgment). Moreover, sounding a vehicle horn briefly in a commercial parking lot defies any reasonable person's notion of "criminal activity".

      The defendants further claim that the request is overbroad and "would be subsumed under arrest or traffic enforcement training materials." (Opposition at p. 12). However, it is clear that it is the Department's policies and procedures regarding "investigatory stops" that are responsive to these discovery requests. That Dutton was initiating an investigative stop when he approached the plaintiff is more fully discussed in her motion for partial summary judgment. The Department undoubtedly has policies and training materials on when it is proper to stop a citizen and demand identification, and proper procedures to follow in doing so. Given the facts and allegations that gave rise to the plaintiff's complaint, she is certainly entitled to review all of these documents.

      In their opposition, the defendants also continue to claim that AS 28.25.131 "requires

members of the public to produce their drivers' license to the police upon demand." (Opposition, Docket 70 at p. 11, n. 6). However, as the plaintiff has noted a number of times (see e.g. Motion to Compel, Docket 51 p.2 n.1), "a licensing statute cannot be used for the purpose of finding out who a [person] is . . . In other words the licensing statute cannot be used as a means for obtaining information or evidence not related to the licensing requirement." *Schraff v. State,* 544 P.2d 834, 839 (Alaska 1975). It is undisputed that Dutton requested ID in order to determine the plaintiff's identity, not to find out if she was licensed to drive a car. (Deposition of Robert Dutton p. 33, filed with plaintiff's motion at Docket 85)

      Information regarding the Department's policies and procedures is also relevant, as stated in the plaintiff's motion, to municipal liability pursuant to *Monnell v. Department of Social Services,* 436 U.S. 658 (1978). There the court found that there may be liability on the part of local governments if:

> the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover . . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels.

*Id.* at 690-691. The plaintiff's complaint put the Department on notice that the plaintiff considers it responsible for the actions of its employees and for the deprivation of her civil rights. Whether or not the officers in question were actually *following* departmental policies that are themselves unconstitutional is something that the plaintiff was not in a position to ascertain prior to discovery. As also noted in the plaintiff's motion, "Discovery is not limited to the issues raised only in the pleadings but rather it is designed to define and clarify the issues." *Hampton v. City of San Diego,* 147 F.R.D. 227, 229 (S.D. Cal. 1993), citing *Oppenheimer Fund, Inc. v. Sanders,*

437 U.S. 340, 351 (1978).

>**2. a) The documents and information requested by the plaintiff regarding complaints, discipline and terminations are relevant to the plaintiff's claims.**

As outlined in plaintiff's motion, Interrogatory Nos. 5 through 8, and Requests for Production Nos. 11 through 16 request information regarding complaints, disciplinary proceedings, and employment terminations regarding defendants Dutton and Davis in connection with their employment with the Anchorage Police Department. (Exhibit 3 to Plaintiff's Motion.) This information is clearly relevant, and necessary for the plaintiff in order to litigate her claims against the defendants. Information regarding prior instances of misconduct bears on the officers' credibility, their patterns of conduct, notice to the Department, and ratification by the Department. The existence of a pattern of misconduct is also relevant to the issue of punitive damages, since it may lead to evidence of a continuing course of behavior reflecting malicious intent.

Plaintiff Judy Berman maintains that she was in fact complying with the officers' request for identification, and was in the process of locating her identification and removing it from her wallet to show the officers, when Davis suddenly became extremely angry and grabbed the wallet out of her hands, and then both officers proceeded to handcuff her. It was apparent to the plaintiff that the officers became enraged because she had expressed her dissatisfaction were their conduct up to that point. (See Affidavit of Judy L. Berman filed with Plaintiff's Opposition to Motion for Summary Judgment.) The plaintiff maintains that it was outrageous for the officers to misuse the trust and authority placed in them by the citizens of Anchorage to vent their malicious feelings toward the plaintiff. It is certainly relevant to this case whether the officers had a pattern of anger issues, of using rough treatment on individuals they thought were disrespecting

them, of misusing their authority as police officers, or any other pattern of bizarre, erratic and explosive behavior.  It is also relevant to her claims against the Department whether the Department knew of any problems or potential problems with these employees prior to the incident in question, and whether it took adequate measures to remedy the problems, and also whether it adequately supervised and trained these employees.

Documents relating to the termination of Dutton's employment with the Department are also clearly relevant.  Plaintiff Judy Berman maintains that Dutton clearly informed her that he did not intend to cite her for anything, and allowed her to walk away after their initial encounter.  (See Plaintiff's Complaint; Affidavit of Plaintiff.)  Dutton himself admits that he did not ask for identification until the plaintiff was already walking away.  (See police report.)  It was not until after she had already walked away that he began to harass her by running after her and asking for identification, and in fact became so obsessed with the need to see identification that he went so far as to use physical force, and to enlist Sgt. Davis to also use physical force.  (See Plaintiff's Complaint; Affidavit of Plaintiff; Police Reports.)  That Dutton had not real need to see identification, and no rational reason for using any level of force to obtain it, became apparent from his own remarks.  When asked what he intended to do once the plaintiff showed him identification, Dutton stated that he probably would have let her go. (Dutton deposition p. 24).[2]

Dutton left the Department approximately one year after the incident that is the subject of this action, an currently works as a delivery driver for UPS.  There are many reasons why documents relating to his termination are relevant to this action.  He may have left because of a

---

[2] The specific instance of misconduct by the officers discussed here are intended as examples.  The plaintiff believes the discovery requested is relevant to all of her claims against the defendants, for the reasons discussed above.

REPLY TO OPPOSITION TO MOTION TO COMPEL
CASE NO. A04-0227 CV (TMB); PAGE 6 OF 17

physical, mental or emotional disability which would certainly be relevant to his perception of events that are in dispute, and to his fitness and competence on the job on the date in question. He may have had substance abuse issues which are relevant for the same reasons. He may have been terminated for unsatisfactory performance, insubordination, misconduct towards coworkers or members of the public, anger issues, incidents involving excessive force, or any number of reasons that are clearly relevant to the issues of this case. If, however, after eleven years on the police force, Dutton simply decided that he was ready to do something else, there is certainly no harm to him in disclosing that fact. The plaintiff is also entitled to discover any information tending to show that the Department had knowledge of facts that should have caused them to terminate Dutton even before the date of the events that are the subject of this action.

**b. The discovery rules, and case law interpreting those rules, support the plaintiff's position that this information is relevant and discoverable.**

In her motion, the plaintiff cited a number of cases which discussed why the kind of information requested is relevant in cases involving civil rights violations, assault, false arrest and malicious conduct. (Motion to Compel, Docket 51 pp. 4-6.) The defendants are incorrect when they state that these cases are distinguishable from the instant case. (Opposition to Motion to Compel, Docket 70 p.9-10.) In *Soto v. City of Concord,* 162 F.R.D. 603, 614-615 (N.D. Cal. 1995), the court found that personnel records, including disciplinary records, of the police officers were and relevant and discoverable. As the plaintiff noted on p. 5 of her motion, the court found that

> The personnel files contain information on each officer's ethics, interpersonal relationships, decision-making abilities, work and safety habits, and crime scene management techniques. . . . Each of these types of documents may be quite relevant to issues involved in Plaintiff's excessive force claim, because such documents may reveal the defendant officers' patterns of behavior, as well as

>the City's response to such behavior.

*Id.* at 615 (emphasis added).

The court in *Hampton v. City of San Diego,* 147 F.R.D. 227 (S.D. Cal 1993) also found that "the personnel files and internal affairs histories of the two named officer defendants" to be "relevant to the allegations in this lawsuit." *Id.* at 229 (emphasis added). As the plaintiff noted on p. 4-5 of her motion

>Information contained in these files may be relevant on the issues of credibility, notice to the employer and motive of the officers. Further, information concerning other instances of misconduct may also be relevant on the issue of punitive damages, in that the information may lead to evidence of a continuing course of conduct reflecting malicious intent.

*Id.* at 229 (emphasis added).

And in *Ramirez v. County of Los Angeles,* 231 F.R.D. 404 (C.D. Cal. 2005) the court rejected the defendants' objection that the plaintiff's discovery requests are "overly broad in seeking all discipline and personnel complaints against [the defendant]" Id. at 412 (emphasis added). The court found the documents would "help establish a pattern or practice where professional conduct is called into question." and would "bear upon LASD's notice of [the defendant's] previous alleged misconduct and/or responses to such alleged misconduct." *Id.* at 412. The court also found that the documents should be released directly to the plaintiff, rather than for in camera review because the "defendants did not comply with requirements to invoke the official information privilege." *Id.* at 410. In this case, as discussed below, the defendants also have not properly invoked the official information privilege.

The defendants cite *Segura v. City of Reno*, 116 F.R.D. 42 (D. Nevada 1987), to support their position that complaint and disciplinary records of the police officers are not

discoverable. However that ruling represents a minority opinion. The majority of courts that have considered this issue have ruled, as in the cases cited above, that documents regarding citizen complaints and disciplinary actions "contain information about the officers' performance, conduct, and behavior which are relevant to their credibility, history and patterns of behavior, as well as any previous notice to [the Department] of misconduct, any ratification of their conduct by [the Department] and the motive of the individual officers." *Gordon v. City & County of San Francisco,* 2004 U.S. Dist. LEXIS 20021 at 4 (N.D. Cal. 2004).

### c) The inquiry as to whether information is relevant, and therefore discoverable, is different from the inquiry as to whether it is admissible.

The defendants argue that information regarding complaints and disciplinary actions is not admissible at trial, and therefore is not subject to discovery by the plaintiff. However, the inquiry as to whether information is relevant, is different from the inquiry as to whether it is admissible. Information that may not be admissible at trial may still be subject to discovery. "So long as information has the necessary element of relevance . . . the fact that the information might be subject to an exclusionary objection . . . is not a ground for objecting to discovery of the information. *In short, discoverable information need not be admissible at trial."* (Emphasis added) Moore's Federal Rules Pamphlet 2005 § 26.5[1], citing *inter alia* 6 Moore's Federal Practice § 26.42 (Matthew Bender 3d. ed.); *United States v. City of Torrance*, 164 F.R.D. 493, 495 (C.D. Cal. 1995) (discoverable information need not be admissible at trial).

Furthermore, the court in *Miller v. Pancucci,* 141 F.R.D. 292 (C.D. Cal. 1992) found that evidence of prior complaints and disciplinary actions was not only relevant and discoverable, but might also be admissible at trial. The court noted that "under Rule 404(b) of the Federal Rules of Evidence, evidence of prior bad acts is admissible to prove motive, opportunity,

preparation, plan, knowledge, identity, or *absence of mistake or accident.*" (Emphasis in original). *Id.* at 296 n.3.

As noted above, relevance for discovery purposes is construed broadly. Discovery should be allowed unless the information "has no conceivable bearing on the case" *Id.* at 296, citing *Wright & Miller, Federal Practice and Procedure,* § 2008.

**3. The defendants did not assert a federal privilege in their discovery responses, and therefore have waived that objection.**

The plaintiff noted in her motion to compel that the defendants cannot claim a state or local privilege in an action brought under federal statute. *United States v. Zolin,* 491 U.S. 554, 562 (1989); *Miller v. Pancucci,* 141 F.R.D. 292, 297 (C.D. Cal. 1992); *Kelly v. City of San Jose,* 114 F.R.D. 653, 656 (N.D. Cal. 1987). She further noted that since the defendants did not claim a federal privilege in their responses to the plaintiff's discovery requests, they have waived that objection. *Miller v. Pancucci,* 141 F.R.D. 292, 300. The defendants respond that because their response to one of plaintiff's interrogatories contained a reference to AMC 3.90.040(O), they have in fact claimed a privilege under federal law. (Docket 70, p.7 fn.4). That argument is ludicrous. The fact that a local ordinance cited by the defendants makes a passing reference to federal law cannot satisfy the requirement that a "party who receives a discovery request must, within the time permitted by rule to respond or object, <u>serve and file an objection that invokes the official information privilege by name</u>." (Emphasis added) *Id.* at 300. Furthermore, "[t]he party must set forth this objection separately in response to each discovery question or request that would reach material covered by the privilege." (Citation omitted.) *Id.* at 300. The defendants did not invoke the privilege by name, and the section of the Anchorage Municipal Code that they argue covers them was only cited in response to <u>one</u> discovery request. Since the defendants did

not claim a privilege under federal law in their responses to discovery requests, the court should find that they have waived that objection.

**4. The defendants did not follow proper procedures in order to invoke Federal privilege.**

In addition to failing to claim any Federal privilege in their response to discovery requests, the defendants also failed to follow any of the procedures necessary to invoke Federal privilege. "The governmental privilege must be formally asserted and delineated in order to be raised properly." *Kerr v. United States District Court for the Northern District of California,* 511 F.2d 192, 198 (Ninth Cir. 1975), *Aff'd at* 426 U.S. 394; citing *inter alia United States v. Reynolds,* 345 U.S. 1, 7-8, 10-11 (1953); *United States v. Nixon,* 418 U.S. 683, 688 (1974). "A party that receives a discovery request that would reach material that it believes is covered by the official information privilege must, within the permitted by rule to respond or object, serve and file an objection that invokes the official information privilege by name. The party must set forth this objection separately in response to each discovery question or request that would reach material covered by the privilege." *Kelly v. City of San Jose,* 114 F.R.D. 653, 669 (N.D. Cal. 1987). "The asserting party . . . must sufficiently identify the documents so as to afford the requesting party an opportunity to challenge the assertion of privilege." *Miller v. Pancucci,* 141 F.R.D. 292, 300 (C.D. Cal. 1992). "To properly support each such objection the party also must submit, <u>at the time it files and serves its response to the discovery request</u>, a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." (emphasis added) *Kelly, Supra* at 669; *See also, Kerr, Supra* at 198; *Miller* at 300. And in *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) the court stated that "the party asserting the privilege

(the defendant police department) must properly invoke the privilege by making a 'substantial threshold showing.' In order to fulfill the threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matter to be attested to in the affidavit." *Id.* at 613.

The defendants failed to properly follow the procedures required to invoke the official government privilege; instead they based their objections on municipal law, which as noted by the plaintiff and conceded by the defendants, does not apply. In addition, the affidavit that was eventually filed in response to the motion to compel, was inadequate for a number of reasons as discussed below.

The plaintiff notes that it was the responsibility of the Municipality, as the party asserting objections to discovery requests, to follow the proper procedures in raising those objections. In addition, this issue has undoubtedly come before the Municipality before, and therefore it certainly must have been aware of the fact that federal rather than local privilege applies, and of the proper procedures to follow.

**5. The Affidavit filed by the Department does not meet the threshold requirement of *Kelly* and its progeny**

In *Kelly v. City of San Jose,* 114 F.R.D. 653, (N.D. Cal. 1987). the court set forth the requirements of the affidavit that must be filed by the party asserting the official information privilege:

> The affidavit or declaration from the agency official must include: (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality . . .(2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of

harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Kelly* at 114 F.R.D. at 670. These requirements have been followed by cases that have addressed the official information privilege in the context of civil rights actions against police departments. *See e. g. Ramirez v. County of Los Angeles,* 231 F.R.D. 407 ( C.D. Cal. 2005); *Gordon v. City and County of San Francisco,* 2004 U.S. Dist. LEXIS 20021 (N.D. Cal. 2004); *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995); *Miller v. Pancucci,* 141 F.R.D. 292(C.D. Cal. 1992).

In its opposition to the plaintiff's motion to compel, the Department provided an affidavit from Thomas Nelson, who states that he is a "captain in the Department of Public and Internal Affairs" (Nelson Affidavit p.1). Captain Nelson's affidavit fails to meet the requirements listed above for a number of reasons.

Element (2) requires "a statement that the official has personally reviewed the material in question." Paragraph 7 of Nelson's affidavit states that he has "personally reviewed the internal affairs files of A.P.D. and there is no record of any I.A. investigation having been conducted in regard to the conduct of Officers Davis and Dutton in regard to this incident." Nowhere, however, does he state that he did in fact review all complaints and disciplinary proceedings regarding these two officers, or that he reviewed all documents related to the termination of Dutton's employment. Without actually reviewing these documents, of course, it would be difficult for him to determine what harm would result from their disclosure.

Element (4) requires "a description of how disclosure subject to a carefully crafted protective order would create substantial risk of harm to significant governmental or privacy interests." Nelson makes the conclusory and rather circular argument that, "In my opinion, even

disclosure of the requested information under a carefully crafted protective order would create a substantial risk of harm to significant governmental and privacy interests, as it would undermine my agency's interest in keeping confidential our internal affairs files and in preserving the integrity of our investigations." (Nelson Affidavit p.4).  A "general claim that the police department's internal investigatory system would be harmed by disclosure of personnel files is not sufficient to meet the *Kelly*  threshold test for invoking the official information privilege. *Miller,* 141 F.R.D. at 301." *Soto v. City of Concord,* 162 F.R.D. 603, 615 (N.D. Cal. 1995). *Soto* further noted that,

> The court in *Miller* allowed  discovery of personnel files, including personnel complaints, training records, and internal affairs investigation files, despite defendants' general claim of harm to their internal investigatory system. *Id.* at 301-02.

*Soto* at 615.

The affidavit also states that " our officers  may in the future hesitate to stop and detain people like Ms. Berman for fear they will be retaliated against . . . by a discovery process which could allow individuals like Ms. Berman to gain access to the officers' confidential files." (Affidavit p.4-5).  There are a number of serious problems with this argument.  For one thing, as Nelson himself asserts, "Law enforcement, by its nature, exposes officers to hazards . . ."  He goes on to say that officers frequently deal with people who are angry, threatening, and who use violence. (Affidavit p. 4).  It is in the nature of police work, that officers sometimes deal with people who turn out to be violent, yet it would be unreasonable for the police to "hesitate" to do their job for fear that it may be dangerous.  Since police officers are required to perform their duties without succumbing to fears of being physically harmed, it is doubtful that a competent officer would be deterred from carrying out his or her lawful duties by threat the of a lawsuit and discovery process in the future.  If anything, an officer would be relieved to know they were

dealing with someone who, if they felt they were treated poorly, pursued proper channels to vindicate their rights, rather than resorting to violence and retribution.  Furthermore, for an officer to "hesitate" to "detain people like Ms. Berman" is actually a good thing from the plaintiff's point of view, since, as the plaintiff has asserted, the officers' acts in this instance were malicious, unconstitutional and undertaken for extremely improper motives.  If the knowledge that aggrieved citizens have the right to file lawsuits and conduct discovery leads to greater diligence on the part of police officers in performing their duties, and makes them more conscious of protecting citizens' civil rights and rights of privacy, and less likely to misuse their authority as the officers did in this case, then the disclosure sought by the plaintiff will be beneficial rather than harmful.

The affidavit also does not say, as required by element (4), how the officers would be harmed if the plaintiff and her attorney had access to personnel records, provided that there was a carefully crafted protective order that prohibited redisclosure.

In addition, the affidavit does not address element (5), which requires "a projection of how much harm would be done to the threatened interests if the disclosures were made." *Kelly, Supra* at 670.[3]

Since the affidavit filed by the defendants does meet the threshold requirements under *Kelly,* the defendants should be required to disclose the information requested by the plaintiff.  "<u>If the court concludes . . . that defendant's submissions are not sufficient to meet its threshold burdens,  the court will order disclosure of the material.</u>  If the court concludes that defendant's submissions meet the threshold requirements . . . the court will order an *in camera* review . . ." *Kelly* at 671 (emphasis added).  "If the Court finds that such submissions are insufficient, it will

---

[3] The plaintiff also notes that Thomas Nelson's affidavit was not made under "penalty of perjury" as required by *Kelly,* 114 F.R.D. at 669.

order disclosure of the requested documents. In other words, should the threshold requirements not appear in the papers, the privilege assertion will be overruled in its entirety and complete disclosure will be ordered. No *in camera* inspection will occur." *Miller v. Pancucci,* 141 F.R.D. 292, 301 (C.D. Cal. 1992). "Under the circumstances, the court does not believe that it is necessary to conduct an in camera review of the subject documents because the defendants did not comply with requirements to invoke the official information privilege." *Ramirez v. County of Los Angeles,* 231 F.R.D. 407, 410 ( C.D. Cal. 2005). A party "asserting a claim of the official information privilege must submit an affidavit to support its claim to justify submission of requested documents to the court for *in camera* review. Failure to provide an adequate affidavit waives the privilege and justifies production of the requested documents, if they also meet the threshold test for relevance." *Gordon v. City and County of San Francisco,* 2004 U.S. Dist. LEXIS 20021 at 10 (N.D. Cal. 2004).

**6. The defendants did not file their Motion for Summary Judgment On Qualified Immunity until after the close of discovery.**

The defendants have argued that discovery of the information requested by the plaintiff should not be allowed until after the court has ruled on their motion for summary judgment on qualified immunity. (Docket 70 p.3). However, as the court stated in *Saucier v. Katz,* 533 U.S. 194 (2001), a ruling on the qualified immunity issue "should be made early in the proceedings" and " 'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.' " *Id.* at 200-201 (Citation omitted).

Here, the defendants chose to wait until more than two months after discovery had closed before filing their motion. It makes no sense for the defendants to wait until after the discovery process had been completed before seeking a ruling on the immunity issue, and then argue that

discovery should not be allowed until after the court rules on their motion. In addition the plaintiff has argued in her Opposition that the defendants' Motion lacks merit for a number of reasons, including the fact that there are significant material factual issues which would preclude an entry of summary judgment for the defendants.

### 7. Conclusion

Based upon the foregoing, as well as on the plaintiff's motion, the plaintiff respectfully requests that the Court grant her motion to compel discovery.

DATED this 10th day of July, 2006.

                                                 s/ Karen E. Bretz_____
                                                 Karen E. Bretz
                                                 Attorney at Law
                                                 P.O. Box 91457
                                                 Anchorage, AK 99509
                                                 (907) 277-5847 Voice
                                                 (907) 277-5848 Facsimile
                                                 e-mail: kbretz@alaska.net
                                                 Alaska Bar No. 9911058

Certificate of Service

I certify that on the 10th day
of July, 2006 a true and
correct copy of the foregoing
document was served electronically
on:

   Mary Pinkel
   Assistant Municipal Attorney

 s/ Karen E. Bretz\_\_
 Karen E. Bretz

REPLY TO OPPOSITION TO MOTION TO COMPEL
CASE NO. A04-0227 CV (TMB); PAGE 17 OF 17