Mary B. Pinkel
Assistant Municipal Attorney
Municipality of Anchorage Department of Law
Civil Division
P.O. Box 196650
Anchorage, Alaska  99519-6650
(907) 343-4545 (phone)
(907) 343-4550 (fax)
uslit@muni.org

Attorney for Defendants Anchorage
Police Department, Officer Robert Dutton,
And Sergeant Gil Davis

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JUDY L. BERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ANCHORAGE POLICE DEPARTMENT, | ) |
| OFFICER ROBERT DUTTON, and | ) |
| SGT. GIL DAVIS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

U.S. District Court Case No. 3:04-cv-227-TMB

### DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'

### MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY

Defendants, the Anchorage Police Department, Officer Robert Dutton and Sergeant Gil

Davis ("the Municipal Defendants"), through counsel, the Municipal Attorney's Officer, hereby

reply to the Plaintiff's Opposition to the Municipal Defendants' Motion for Summary Judgment on

Qualified Immunity.

**INTRODUCTION**

For the reasons outlined below, the Municipal Defendants are entitled to summary judgment under the doctrine of qualified immunity on all of the claims alleged by the Plaintiff in her complaint. Where a party has moved for summary judgment, all evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-9 (1986). However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial. *Id.* at 248-9.

In the present case, the Plaintiff has failed to show that there is sufficient evidence supporting her claims to require a fact-finder to resolve the parties' differing versions of the truth at trial. In her Opposition Brief and Exhibits, the Plaintiff has failed to establish that there is a genuine issue of material fact that would preclude summary judgment for the Municipal Defendants on the Plaintiff's causes of action under the doctrine of qualified immunity. Therefore, the court should grant summary judgment to the Municipal Defendants.

**ARGUMENT**

I.    **THE MUNICIPAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT: THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT.**

The Plaintiff erroneously argues that genuine issues preclude summary judgment to the Defendants. However, a close scrutiny of Ms. Berman's deposition and affidavit testimony suggests otherwise. For example, there is no dispute about the following facts:

a.    Before Officer Dutton initially approached Ms. Berman, Ms. Berman honked her horn at the Chens at least four or five times. (Deposition of Berman, page 33.)

b.    Ms. Berman then parked in the space next to the Chens' vehicle. (Deposition of Berman,

page 33).

c.  After Berman had successfully parked her car next to the Chens, she then honked her horn at them "a couple more times." (Deposition of Berman, page 34.)

d.  Ms. Berman's purpose in honking her horn at the Chens was to tell the Chens "that was really rude." Her honking at the Chens had nothing to do with her concern for her safety. (Deposition of Berman, page 34, page 36.)

e.  The situation in the parking lot had become "mildly adversarial" before Dutton had approached her. (Deposition of Judy Berman, page 55.)

f.  When Officer Dutton asked her if there was something wrong with her car horn, she denied that there was anything wrong with it. (Deposition of Berman, page 38.)

g.  Officer Dutton told her that she had been creating a disturbance. (Deposition of Berman, page 38.)

h.  Officer Dutton told her that she had no right to pull into the parking space from the left. (Deposition of Berman, pages 38-39.)

i.  Berman started to walk away from Officer Dutton after he stopped her. (Deposition of Berman, page 43.)

j.  When Officer Dutton asked to see her identification, Berman told him "No." (Deposition of Berman, page 43.)

k.  Berman told Officer Dutton he did not have the "right" to stop her and ask her for her identification. (Deposition of Berman, page 43.)

l.  It was Berman's opinion that Officer Dutton could not legitimately ask for her identification because she "thought that was a second stop" because she "was already walking away." (Deposition of Judy Berman, page 43.)

m.  When Officer Dutton first requested her identification, Judy Berman told him she did not have to produce it. (Deposition of Judy Berman, page 48.)

n.  Officer Dutton asked for her identification at least a second time. (Deposition of Judy Berman, pages 47- 48.)

o.  Berman asked to see Officer Dutton's and Sergeant Davis's identification before she made any attempt to provide them with her identification. (Deposition of Judy Berman, pages 66-67.)

p.  Officer Dutton showed Judy Berman his identification even though she had still not

provided her identification and even though he was in uniform.  (Deposition of Berman, page 68.)

q.  Berman claims no emotional or physical injuries in this lawsuit.  (Deposition of Judy Berman, pages 15-27.)

r.  The only injuries Berman claims are her "injuries" due to the alleged violations of her civil rights.  (Deposition of Judy Berman, pages 15-27.)

Under the undisputed facts listed above, the Municipal Defendants are entitled to summary judgment in this proceeding.  As discussed below, Officers Dutton and Davis did not violate Ms. Berman's constitutional rights on April 6, 2002.

**II.    THE PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE TO DEFEAT THE MUNICIPAL DEFENDANTS' ENTITLEMENT TO SUMMARY JUDGMENT.  THE OFFICERS DID NOT VIOLATE MS. BERMAN'S CONSTITUTIONAL RIGHTS.**

**A.  THE OFFICERS DID NOT VIOLATE MS. BERMAN'S CONSTITUTIONAL RIGHTS.**

In her opposition brief, the Plaintiff argues that the Municipal Defendants are not entitled to summary judgment on her claim that her constitutional rights were violated under 42 USC Section 1983.  She states the following constitutional violations occurred:

(1)  "when the officers seized her person by handcuffing and arresting her"  (P's brief at page 4);

(2)  When Officer Davis seized  her wallet and searched through it without her permission (P's brief page 5);

(3)  When Dutton initially stopped her (P's brief, page 6); and

(4)  When the officers "surrounded her at the store entrance and each grabbed a hold of one of her arms" (Plaintiff's brief, page 8).[1]

---

[1]  The Plaintiff does not discuss the officers' and Ms. Berman's actions in chronological order.  However, to avoid confusion and for purposes of efficiency, the defendants will discuss the actions of the officers and Ms. Berman chronologically.

However, as discussed below, all of the officers' actions were justified and did not violate Ms. Berman's constitutional rights.

1.      **Officer Dutton's actions in stopping and questioning Ms. Berman and demanding to see her driver's license were appropriate.**

First, Ms. Berman states that Officer Dutton's stopping and questioning of her in the Carrs' parking lot after she had repeatedly honked her horn at the Chens was unconstitutional.[2]  Ms. Berman pathetically attempts to justify her conduct towards the Chens, by stating that:

> All that she [Berman] had done was sound her horn a few times, and mouth to the Chens as they passed by her car, "That was really rude." (referencing Plaintiff's affidavit).  Therefore all that Dutton heard was a horn sounding a few times and all he saw was Mr. Chen parking his vehicle, the plaintiff parking hers, and the Chens entering the store.  Based on these observations, it is impossible to find that the officers had a reasonable belief that imminent public danger existed.

Plaintiff's Opposition to Defendants' Motion for Summary Judgment on Qualified Immunity, page 7. However, in her brief, Ms. Berman fails to include the fact that by her own admission, she honked four to five times, and then honked again at the Chens after they had exited their car.  Deposition of Berman, pages 33-34. Moreover, by her own admission, she told Officer Dutton that she had behaved in the manner that she had because the Chens had taken the parking space she had wanted. Id., page 32. Affidavit of Dutton, paragraph 7.  Officer Dutton concluded that this explanation was illegal and irrational. Id.  Under the Anchorage Municipal Code, it is not acceptable to use one's horn to harass other people.  Id. it is also not normal behavior to react in the manner in which Ms. Berman had reacted to the mere taking of a parking space by another driver. Id.  Therefore, Berman's explanation of her behavior further aroused Dutton's suspicions that she had been disturbing the peace without justification.

---

[2]  For purposes of this motion, the defendants will not quibble with Ms. Berman's contention that she did not audibly yell at the Chens, but merely "mouthed" at them that they were "rude."

The Officer's conduct in initially stopping and questioning Ms. Berman in the parking lot was lawful and appropriate. Under Alaska law, an officer may conduct an investigatory stop where "reasonable suspicion that imminent public danger exists or serious harm to person or property has recently occurred." *Coleman v. State,* 553 P.2d 40 (Alaska 1976). In the present case, Ms. Berman's behavior led the officers to reasonably conclude that there was a potentially explosive situation, and that Ms. Berman could present a danger to the Chens or other members of the public. "Intrusive police conduct may be acceptable where there is a legitimate reason to be concerned for the welfare of a motorist." *Marsh v. State,* 838 P.2d 819 (Alaska 1992).

The Plaintiff's reliance on *Moreno v. Baca,* 431 F.3d 633 (9th Cir. 2005) as support for her argument that Officer Dutton should not have stopped and detained her is also misplaced. In *Baca,* a parolee, Mr. Moreno, was arrested and searched without cause in Los Angeles. It was not until after searching and detaining Mr. Moreno that the officers learned he was a parolee under the supervision of the California Department of Corrections who was thus subject to the condition that he could be searched without a warrant by law enforcement. The court, in affirming the lower court ruling, held that "police officers cannot retroactively justify a suspicionless search and arrest on the basis of an after-the-fact discovery of an arrest warrant or a parole condition." *Baca, supra,* 431 F.3d 633, 641 (2005).

This case bears no similarity to the *Baca* case. Here, the officers had heard Ms. Berman's loud, repeated and unnecessary honking of her horn at the Chens before they took action. The honking "was not a normal 'beep beep' but a long series of loud honking." Affidavit of Davis, paragraph 5. Unlike the defendant in the *Baca* case, who the police had stopped and detained merely because he had happened to be acting nervous in a high crime area of L.A., Ms. Berman had engaged in disorderly conduct and had violated a traffic ordinance by repeatedly honking her horn

for the stated reason that she was displeased that the Chens had taken what she perceived as her parking space. Both Officers Dutton and Davis were patrol officers whose duties included maintaining order and protecting life and property within the Municipality of Anchorage. Affidavit of Davis, paragraph 3; Affidavit of Dutton, paragraph 2. From the outset, Davis's and Dutton's observations of Berman's behavior led them both to conclude that something was occurring which needed their immediate attention. Affidavit of Davis, paragraph 5; affidavit of Dutton, paragraph 6.

Officer Dutton had the authority to request Ms. Berman's license or other identification. After Officer Dutton stopped and questioned Ms. Berman about her conduct in creating a disturbance and sounding her horn repeatedly, he was authorized to request that she produce her driver's license or identification. *Marsh v. State,* 838 P.2d 819 (Alaska 1992). When a police officer stops a motorist for a traffic violation, "the officer may ask the motorist to produce routine driving documents." *Clark v. Municipality of Anchorage,* 112 P.3d 676 (Alaska Ct. App. 2005) (citations omitted). A driver's license is a "routine driving document." *Id.* (citations omitted).

### 2.    The Officers had the right to restrain and handcuff Ms. Berman

Ms. Berman argues that the officers "grabbed her by the arms as she was walking [away from them] toward the entrance to the grocery store, and that shortly thereafter they handcuffed her arms behind her back." Plaintiff's Opposition to Motion for Summary Judgment, page 10. She argues that this use of force amounted to "assault and battery" because "the officers did not have the right to arrest the plaintiff, because they knew she was in fact complying with their request for identification." Id., page 10. It should be noted that Ms. Berman claims no injuries in this lawsuit, emotional or physical. Deposition of Berman, pages 15-27. She vaguely only claims "injuries" due to the alleged violation of her civil rights. Id.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. O'Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865 (1989). The level of "force" that was used on Ms. Berman was entirely appropriate even under her version of events. The officers started with officer presence and voice commands when Berman attempted to leave. Affidavit of Dutton, paragraph 7. The level of force then graduated to soft empty hand control with the sleeve guide, then placement of her hands behind her back and handcuffing. Affidavit of Dutton, paragraphs 11 and 14. Affidavit of Davis, paragraphs 7 and 11. The amount of force used by the officers was reasonable in light of the fact that Berman had been given many chances to cooperate and appeared to the officers to continue to evade Officer Dutton's and Sergeant Davis's commands. Even under Ms. Berman's own version of events, her words and actions communicated to the officers that she did not think she needed to cooperate with them and that she would not cooperate with them.

When Ms. Berman continued to walk away and disobey Officer Dutton's orders to produce identification, the safety interest in controlling her movement and stopping her non-compliance grew. Her earlier statements to Dutton that her rage at the Chens was motivated by the fact that they had taken her parking spot created suspicion in Dutton's view that a road rage or other potentially explosive situation existed. Affidavit of Dutton, paragraph 6. Based on viewing her behavior in front of the store, Officer Davis believed she was potentially dangerous and could pose a threat to public safety. Affidavit of Davis, paragraph 9. Accordingly, on balance, applying the *Graham* analysis, the gradually increased type and amount of force -- the sleeve guide technique, then handcuffs – was justified, in light of the governmental interest at stake: the need to protect the public from an individual who had engaged in erratic and explosive behavior and who was being non-

compliant.[3]

### 3.    Officer Davis had the right to take out and read Berman's driver's license.

After Ms. Berman continued to evade Officer Dutton, Officer Dutton and Sergeant Davis restrained Ms. Berman by taking control of one arm each. Affidavit of Davis, paragraph 11. They placed her arms behind her back. Id. It was Davis's understanding that he and Dutton had detained Berman and that she was under arrest. Id. Davis then removed her wallet out of her hands and took out her driver's license. Id. He returned her wallet to her coat pocket and kept the license to examine. Id.

Sergeant Davis had the authority to search the wallet for Ms. Berman's identification. A police officer has broad authority to conduct a search of an arrestee's person and the area within his control incident to a valid arrest. *Stephens v. State,* 698 p.2d 664 (Alaska 1985). *Crawford v. State,* 138 P.3d 254 (Alaska 2006). ("Warrantless searches of items immediately associated with the person are justified even after the arrestee is in police custody because, by their nature, they do not involve 'any greater reduction in the arrestee's expectations of privacy than that caused by the arrest itself.'") *In Re Arturo D.,* 38 P.3d 433 (California 2002). (A limited warrantless search of a vehicle for automobile registration, a driver's licensee and identification documentation does not violate the Fourth Amendment during a valid traffic stop when the driver fails to produce the documents.)

While Ms. Berman disputes that she had started to spin away from the officers, she does not dispute that she had "declined" to produce identification and that she had "continued" walking to the store entrance after being stopped by Officer Dutton. She also does not dispute that Officer Davis

---

[3] In her opposition brief and accompanying affidavit, Ms. Berman attempts to minimize the effect of her behavior on the Chens. However, the fact that the Chens were concerned about their safety indicates the appropriateness of the Officer's quick reactions to Ms. Berman's explosive behaviors in the parking lot. Ms. Berman's indifference to the effect of her behavior on this couple is a further indication of her lack of perspective on this event.

searched her wallet after the officers had already handcuffed her.  Affidavit of Berman, paragraph 25. Therefore, there is no dispute that the search of her wallet occurred after she had been arrested. However, even if she had not yet been arrested, AS 28.15.131 gave the officers the authority to search her wallet for identification.

The Plaintiff's reliance on S*chraff v. State,* 544 P.834, 839 (Alaska 1975) as authority for her contention that the officers were prohibited from reaching into her wallet and taking out her identification is misplaced.  In *Schraff*, the court examined whether cocaine seized from a man's wallet was evidence that should have been suppressed because it had been procured through an unreasonable search and seizure.  The police had found an intoxicated defendant, Mr. Schraff, and his more coherent companion in a tavern.  The police called a narcotics investigator to the scene after the police had entered Mr. Schraff's car (without a warrant) and found marijuana.  The narcotics investigator visited Mr. Schraff at the tavern and demanded to see Schraff's identification two or three times.  Mr. Schraff failed to produce his identification or driver's license.  Instead, Mr. Schraff's companion reached into Mr. Schraff's back pocket and handed Mr. Schraff's wallet to the narcotics investigator.  The investigator then took the wallet and proceeded to go through it for the ostensible reason of finding an identification card.  The narcotics investigator found a folded aluminum foil packet which contained cocaine.  On appeal of the conviction, the court held that if the initial search of Mr. Schraff's vehicle was not unlawful and provided probable cause for Mr. Schraff's arrest, and if the search had been contemporaneous with the arrest, then the search had been lawful. *Schraff, supra,* 544 P.2d 834, 846.

Therefore, in *Schraff,* the court examined the propriety of the officer's actions in taking the wallet from Mr. Schraff's companion and then searching it. The court indicated that if Mr. Schraff had been operating or near a vehicle at the time of the search, the search would have been

permissible under AS 28.15.090 (now AS 28.15.131). *Schraff, supra,* 544 P.2d at 839. The court also found that even if the search of the wallet had not been permissible under AS 28.15.090, the search could still have been permissible on the basis that it was a search incident to a lawful arrest. The court therefore remanded the case for that determination.

In contrast to the *Scharff* case, Ms. Berman had been operating a car at the time that she had created the disturbance in the parking lot. Therefore, it was appropriate for Officer Dutton to request to see her identification or driver's license under AS 28.15.131 as part of his investigation. Moreover, because he was investigating a crime, it was customary to request to see identification to verify that the defendant was who she said she was. Affidavit of Davis, paragraph 8. Further, police officers are not authorized to release a person who has been stopped or contacted for the commission of a misdemeanor or the violation of a municipal ordinance under a "cite and release" if the person fails to provide satisfactory evidence of identity. See AS 12.25.180. Thus, the officers' arrest of Ms. Berman was appropriate, and search of her wallet for identification was permissible as incident to a lawful arrest.

## B.    THE OFFICERS DID NOT FALSELY ARREST MS. BERMAN.

The Plaintiff argues that the Officers are not entitled to qualified immunity on her false arrest claim. However, because Officers Dutton and Davis had probable cause to arrest Ms. Berman for resisting an officer, Ms. Berman's false arrest claim necessarily fails. *Hart v. Parks,* 450 F.3d 1059, 1069 (9th Cir.2006) citing *Carbrera v. City of Huntington Park,* 159 F.3d 374, 380 (9th Cir. 1998) (per curiam) ("To prevail on his section 1983 claim for false arrest…[the plaintiff] would have to demonstrate that there was no probable cause to arrest him.") "Probable cause exists when 'the facts and circumstances within [the officers' knowledge] and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed

or was committing an offense.'" *Hart v. Parks, supra,* 450 F.3d 1059, 1065-1066 (citations omitted). "Police must only show that, 'under the totality of the circumstances, 'a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime.'" *Id.* (citations omitted).

In this case, under the totality of the circumstances, not only because of (1) the unlawful use of a horn; (2) disorderly conduct, as discussed above; but also (3) resisting an officer, a prudent person would have concluded that there was a fair probability that Ms. Berman had committed the crime of resisting an officer, in violation of AMC 08.30.010 A. 4. or in violation of AMC 08.30.010 A.6.[4]  By her own testimony, both at her deposition and in her affidavit, Ms. Berman was non-compliant with the officers, and attempted to obstruct Dutton's investigation of her crime (of disorderly conduct in the parking lot).  She fled (or continued to walk away) after he had indicated he needed further information from her (her identification).[5]  In addition, she repeatedly refused to comply with the request that she show him identification.

---

[4] Although the officers cited Ms. Berman for AMC 08.30.010 A.4., they could have also cited her for a violation of AMC 08.30.010 A.6.  AMC 08.30.010 A 4 and 6 provide as follows:

> AMC 08.30.010 A. A person commits the crime of resisting or interfering with an officer when
>
> 4. The person intentionally, recklessly, or knowingly delays or obstructs a police officer's active investigation of a crime by fleeing after having been told to stop.
>
> 6. The person intentionally, recklessly or knowingly disobeys the lawful orders of any public officer.

Moreover, AMC 15.70.090 prohibits the sounding of a horn in any motor vehicle on any public space except as a warning of danger.  See, AMC 15.70.090 (C).  AMC 8.30.120 states that it is unlawful for any person to knowingly generate loud noise in a public place with the intent to disturb others or in reckless disregard of the peace and privacy of others. AMC 8.30.120 A. and B.  In addition, AS 11.61.110 states that it is disorderly conduct to make an unreasonably loud noise in a public place with the intent to disturb the peace and privacy of another.  AS 11.61.110(a) (2).

[5] Fleeing does not mean that a person has to run or drive away at a high speed.  Affidavit of John Daily, filed in support of Municipal Defendants' Motion for Summary Judgment, paragraph 11.

Ms. Berman has admitted to the following totality of circumstances: that she perceived that the Chens "took" her parking space (Deposition of Berman, page 32); that she honked repeatedly at the Chens and "mouthed" the words "you are rude" at them even though she was able to quickly find a space to park right next to the space they had taken (Deposition of Berman, page 36); that she again honked at the Chens after they had exited their mini-van (Deposition of Berman, pages 33-34, 36); that Officer Dutton told her she should not have pulled into the parking space from the left (Deposition of Berman, pages 38-39); that Officer Dutton also mentioned that she had created a disturbance (Deposition of Berman, page 38); that she walked away from Officer Dutton after he had come up to talk to her about her behavior (Deposition of Berman, page 43); that she told Officer Dutton he "did not have the right" to see her identification after he insisted that she produce it (Deposition of Berman, pages 43-44); that she continued to walk away from Officer Dutton after he had demanded her identification and had tried to speak with her ( Deposition of Berman, page 44-45); that she had already started to walk away from Dutton when he had initially asked to see her identification (Deposition of Berman, pages 44-45); that she demanded to see the officers' identification even though Dutton was in uniform and wearing his police badge and Officer Davis's badge was hanging from his neck (Deposition of Berman, page 67); and that Officer Dutton showed her his identification even though she had still not provided her identification ( Deposition of Berman, page 67).

There is also no dispute about the fact that in the officers' view, by the time they arrested Ms. Berman, they perceived her entire attitude, by her body language and words, as part of a continuing pattern to evade and resist Officer Dutton's active investigation of a crime -- unlawful use of a horn; disorderly conduct -- which the officers had observed. Affidavit of Dutton, paragraph 13; Affidavit of Davis, paragraph 10. Deposition of Dutton, page 32. Deposition of Davis, page 28.

Accordingly, the Plaintiff's characterization of her behavior at the time of the arrest as "in fact complying with their [the officers'] request for identification" is not borne out by the undisputed facts. Even under Ms. Berman's version of events, there is no dispute that Ms. Berman had given both officers probable cause to believe that she was resisting Dutton's attempts to interview her and obtain her identification. By the time Sergeant Davis joined Berman and Dutton in the parking lot, he had already witnessed a pattern of non-compliance on the part of Ms. Berman. He had heard the series of loud honking that was not a normal "beep beep." Affidavit of Davis, paragraph 5. He had observed Dutton speaking with Berman and had observed her waving her arms around and what appeared to Davis to be yelling. Id., paragraph 6. He had observed what appeared to be Ms. Berman's attempts to leave Officer Dutton, and Officer Dutton's attempts to detain Ms. Berman. Id., paragraph 7. He had seen Officer Dutton place Ms. Berman in a "sleeve guide." Id. He overheard Dutton ask Berman for her identification. Id. He heard Ms. Berman angrily tell Dutton that she would not give him her identification. Id.

Ms. Berman has a different version of events from the officers at the point that she took out her wallet (a rectangular object). She states she had taken the wallet out to show her identification. The officers perceived that she had taken it out so that she could take out a pen to write down their names. However, there is no dispute that up to that point she had shown a continuing pattern of fleeing and non-compliance with Officer Dutton. A reasonable officer would conclude that this explosive and irrational woman would not finally comply with Officer Dutton's commands. Therefore, the Officers had probable cause to arrest Ms. Berman for resisting an officer, in violation of AMC 08.30.010 A. 4. or 6.

### C.    THE OFFICERS DID NOT ASSAULT AND BATTER MS. BERMAN.

As discussed in Section II. A. 2. infra, the Officers did not commit assault and battery when they restrained and handcuffed Ms. Berman.  Ms. Berman states  that the actions of the officers in "grabbing"  her by the arms as she was walking toward the store [and away from them] and handcuffing  her arms constitutes "assault and battery" because they did not have the "right" to arrest her.  However, the officers had the right to arrest Ms. Berman at that point in time. Their use of force was entirely reasonable when judged from the perspective of a reasonable officer on the scene. See, Section II A. 2., Infra.

### D.    THE OFFICERS DID NOT MALICIOUSLY PROSECUTE MS. BERMAN.

A malicious prosecution claim requires a lack of probable cause.  *Hart v. Parks, supra,* 450 F.3d 1059 (9th Cir.2006) referencing *Usher v. city of Los Angeles,* 828 F.2d 556, 562 (9th Cir.1987). However, because the officers had probable cause to arrest Ms. Berman, her malicious prosecution claim fails.  See, discussion in II B., infra, regarding the fact that the officers had probable cause to arrest Ms. Berman.

### II.    EVEN IF THE OFFICERS HAD VIOLATED MS. BERMAN'S RIGHTS, THOSE RIGHTS WERE NOT CLEARLY ESTABLISHED AT THE TIME OF BERMAN'S ARREST.

In the unlikely event that  the court were to rule that Officer Dutton and Sergeant Davis violated Ms. Berman's constitutional rights, the court would have to determine the remaining question of whether those rights were clearly established on April 6, 2002.  *See Way v. Ventura,* 445 F.3d 1157 (9th Cir, 2006); *Saucier v .Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "If the law did not put [Officers Dutton and Davis] on notice that [their] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier* at 202, 121 S.Ct. 2151.

Officers Dutton and Davis reasonably believed they had the right to detain arrest and handcuff Ms. Berman on April 6, 2002 after she created a disturbance at the Carrs Huffman Grocery Store in Anchorage and failed to cooperate with their investigation. The Plaintiff has pointed to no case law that suggests otherwise. Therefore, the court should dismiss the Plaintiff's claims. However, if this court were to find that the Officers did violate Ms. Berman's constitutional rights, the Defendants respectfully request that the court find that those rights were not clearly established on April 6, 2002.

### III.     THE PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE TO DEFEAT APD'S ENTITLEMENT TO SUMMARY JUDGMENT.

A municipality is liable for the constitutional torts of its employees under Section 1983 where its "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *Dawson v. City of Seattle,* 435 F.3d 1054, 1065 (9th Cir.2006), citing *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed2d 412 (1989). The Plaintiff argues that the Anchorage Police Department may be liable under 42 U.S.C. section 1983 if the officers were following an official custom which violated the Plaintiff's rights, or if the department failed to provide proper training or procedures. However, because the officers' conduct did not deprive the Plaintiff of any constitutional right, the Plaintiff cannot as a matter of law establish a valid Section 1983 claim against the Anchorage Police Department.

The Plaintiff further argues that even if the Department bears no liability under Section 1983, it could still be liable for claims of misconduct of its employees under state law. However, in the event that this court dismisses this action, the Municipality will raise the defense of *res judicata* with respect to any new lawsuit that the Plaintiff would institute under state law.

### IV.     NOMINAL DAMAGES

In her opposition brief, the Plaintiff has failed to oppose the Defendants' argument that in the event the court fails to grant summary judgment to the Plaintiff, that she would only be entitled to "nominal damages" at trial. The Plaintiff is not asserting any claim for mental or physical injury, nor is she asserting a claim for loss of earnings. Her only claimed damages are the fact that her "civil rights" were violated. Deposition of Berman, pages 22, 24, 27. Therefore, even if this court fails to grant the Defendants' Motion for Summary Judgment, the Plaintiff is entitled to at most nominal damages. *Memphis Community School District v. Stachura,* 477 U.S. 299, 307, 308, n.11, 106 S.Ct. 2537 (1986).

## V.    PUNITIVE DAMAGES

Because the Plaintiff's main claims for false arrest, assault and battery, malicious prosecution and violation of civil rights have no merit, the court should also dismiss the claim for punitive damages. In the event that the court does not grant the underlying motion for summary judgment, the Defendants request partial summary judgment on punitive damages. Moreover, it should be noted that in no case can punitive damages be awarded against a municipality in a 42 U.S.C. Section 1983 lawsuit. *City of Newport v. Fact Concerts,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed. 2d 616 (1981) (municipality is immune from punitive damages in a Section 1983 action even if it fails to object). *See also Mitchell v. Dupnik,* 67 F.3d 216, 223-24 (9th Cir.1995) (no punitive damages in Section 1983 action against sheriff in his official capacity.)

In this case, there is no evidence that the officers acted with malice or with any other evil motive. Accordingly, there is insufficient evidence to support the Plaintiff's claim for punitive damages against the individual officers. *See McCardle v. Haddad,* 131 F.3d 43, 52 (2d Cir.1997) (evidence was insufficient to support instruction for punitive damages when there was no evidence that officer acted with malice or any other evil motive.) Therefore, the Defendants are entitled to

summary judgment regarding plaintiff's claims of punitive damages.

**CONCLUSION**

For the reasons outlined above, the Municipal Defendants request that the court grant their motion for summary judgment on all of the plaintiff's claims under the doctrine of qualified immunity. The officers did not violate any of Ms. Judy Berman's constitutional rights on April 6, 2002. Under the undisputed facts, the Defendants are entitled to summary judgment on all of the Plaintiff's claims. However, in the unlikely event that this court were to find that the officers violated Ms. Berman's constitutional rights, the court should rule that the Defendants are entitled to qualified immunity on all of Ms. Berman's claims since those rights she claims were violated were not clearly established on April 6, 2002, and that they are also entitled to summary judgment on all claims of punitive damages.

Respectfully submitted this 18th day of August, 2006.

FREDERICK H. BONESS
Municipal Attorney


By:    s/ Mary B. Pinkel
           Municipal Attorney's Office
           P.O. Box 196650
           Anchorage, Alaska 99519-6650
           Phone: (907) 343-4545
           Fax: (907) 343-4550
           E-mail: uslit@muni.org
           Alaska Bar No. 8505030

The undersigned hereby certifies that on 08/18/06 a true and correct copy of the *Defendants' Reply to Opposition to Motion for Summary Judgment on Qualified Immunity* was served on:

-    Karen Bretz

by first class regular mail, if noted above, or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

 s/Sheri Curro
Sheri Curro, Legal Secretary
Municipal Attorney's Office