Mary B. Pinkel
Assistant Municipal Attorney
Municipality of Anchorage Department of Law
Civil Division
P.O. Box 196650
Anchorage, Alaska 99519-6650
(907) 343-4545 (phone)
(907) 343-4550 (fax)
uslit@muni.org

Attorney for Defendants Anchorage
Police Department, Officer Robert Dutton,
And Sergeant Gil Davis

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JUDY L. BERMAN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| ANCHORAGE POLICE DEPARTMENT, OFFICER ROBERT DUTTON, and SGT. GIL DAVIS, | ) ) ) ) ) |
| Defendants. | ) ) |

U.S. District Court Case No. 3:04-cv-227-TMB

### AFFIDAVIT OF THOMAS NELSON

Thomas Nelson being duly sworn upon oath deposes and states as follows:

1. I am employed by the Anchorage Police Department ("A.P.D." or "the Department") as a captain in the Department of Public and Internal Affairs, a position I have held since 2004. Prior to serving in the Public and Internal Affairs Unit, I served as the Captain of the Detective Unit. Prior to serving as the Captain of the Detective Unit, I served as the Captain in charge of Personnel. I served as the Captain

Exhibit A

in charge of Personnel from about 2000 to 2003.

2. My duties as the Commander of Public and Internal Affairs consist of overseeing internal investigations of personnel in the APD, and overseeing community relations. In my capacity as Internal Affairs Captain, I have access to all internal affairs ("I.A.") records of the Department. Internal Affairs records consist of personnel records, disciplinary action reports and commendations.

3. As part of my duties as the Commander of Public and Internal Affairs, I have been assigned to assist Assistant Municipal Attorney Mary Pinkel in preparing discovery responses in the above-captioned case. I was contacted by Ms. Pinkel in October, 2005, after the Municipality was served with the first set of discovery responses by Judy Berman, the plaintiff in this lawsuit. I spent considerable time reviewing the first set of discovery requests and assisting Ms. Pinkel in responding to those requests. I signed the verification page on the Interrogatory Responses on behalf of A.P.D. on November 1, 2005.

4. I provided Ms. Pinkel with the relevant, non-official and non-confidential information which responded to the Plaintiff's discovery requests, including job descriptions of the officers, and the relevant statutes and code provisions which deal with an officer's request for identification from individuals who are suspected of committing unlawful activity.

5. In her first set of discovery requests, the Plaintiff requested copies of all complaints and disciplinary actions of Officers Davis and Dutton, and copies of all

documents which related to the termination of Officer Dutton's employment with A.P.D.

6. These records pertaining to these officers are considered confidential personnel records under AMC 3.30.016 D (employment records confidential), AMC 3.90.040 B (personnel files confidential) and AMC 3.90.040 O (any records accorded confidential or privileged status under the code, state or federal law and provided on condition that the information retain its confidential or privileged nature) and under Department policy. The department has consistently maintained the confidentiality of these kinds of records.

7. I have personally reviewed the internal affairs files of A.P.D. and there is no record of any I.A. investigation having been conducted in regard to the conduct of Officers Davis and Dutton in regard to this incident. Normally, in the event that a citizen chooses to complain about an officer, the complaint will be referred to the officer's supervisor. If the complaint is not resolved it is referred to the I.A. unit. I have reviewed APD files and can find no record of any complaints or investigations as a result of the April 6, 2002 incident in which Ms. Berman, an attorney, was arrested after resisting Officers Dutton and Davis. Accordingly, there are no files in the I.A. unit relating to this incident.

8. Due to municipal, state and federal privacy concerns for these two gentlemen, in addition to the Department's over-all interest in protecting its officers from needless inquiry and harassment by individuals who have broken the law, obstructed

our investigations and then filed questionable lawsuits, I am precluded from releasing these records to the Plaintiff in this case. The privacy of employees' personnel and I.A. files is of the utmost importance to the Department. Law enforcement, by its nature, exposes officers to hazards different in kind and degree from those hazards which other workers face. Officers frequently deal with angry citizens and people who break the law. Most officers have, at some point in their careers, received threats of retaliation from individuals that they have arrested. Some of those individuals use violence and even deliberately seek retribution. In my opinion, even disclosure of the requested information under a carefully crafted protective order would create a substantial risk of harm to significant governmental and privacy interests, as it would undermine my agency's interest in keeping confidential our internal affairs files and in preserving the integrity of our investigations.

9.   In this particular instance, based on my knowledge of the case, it is my opinion that both officers acted appropriately and went out of their way to treat Ms. Berman fairly. Officer Dutton even showed Ms. Berman his identification after she had continued to resist providing him with hers. The careful enforcement work of some of our detectives and patrol officers would be obstructed if individuals like Ms. Berman are allowed access to an officer's or former officer's files. For example, our officers may in the future hesitate to stop and detain people like Ms. Berman for fear they will be retaliated against, not only by a future questionable lawsuit by that individual, but by a discovery process which could allow individuals like Ms. Berman to gain access

to the officers' confidential files. Therefore, in this instance, even a carefully crafted protective order would create a substantial risk of harm to the APD's significant governmental interest in law enforcement and to the privacy interests of Sgt. Davis and former Officer Dutton and other officers on patrol who must handle potentially explosive situations like the one encountered here.

10.   In her first set of discovery requests, the Plaintiff also requested the APD's policies and procedures and training materials "regarding the proper action to take when a member of the public who is not suspected of criminal activity declines to produce identification when requested to do so by a police officer." Based on my knowledge of this case, Ms. Berman was stopped because she was suspected of criminal activity—illegally honking her horn and creating a disturbance. Therefore, Ms. Berman's request for policies for non-suspect witnesses makes no sense.

11.   Ms. Berman also seeks policies and procedures and training materials concerning the subject of "requesting identification from members of the public."
I have reviewed our Field Training Task Book and have spoken with our training department about this request. This is a very broad request. I should point out that in our discovery responses, we referred Ms. Berman to AS 28.15.131. That statute requires members of the public to produce their drivers' licenses to the police upon demand. In addition, since Ms. Berman was stopped based on a reasonable suspicion that she had violated the law and then later arrested, it is our traffic enforcement and arrest procedures which would discuss requesting identification from members of the

public. However, APD maintains the confidentiality of these policies and procedures concerning arrests. I have also inquired of our training department, and there are no training materials that exclusively deal with "requesting identification from the public" as those materials would be subsumed under arrest or traffic enforcement training materials. However, it is my opinion that the interests of the department would be harmed if I were required to produce this information to Ms. Berman at this time.

11. The governmental interest in enforcement of the law could be undermined in situations like the present one, if the APD were required to turn its policies and procedures or training materials over to Ms. Berman, a lawyer who clearly showed a lack of respect for the police, the law, and for her fellow citizens. Even a carefully crafted protective order concerning these policies would create a substantial risk of harm to the significant governmental interest of the Department in enforcing the law. The Department does not want individuals who violate the law and then deliberately obstruct our enforcement efforts to have copies of our policies and procedures

concerning arrest. Such individuals could then be better equipped to continue to obstruct our enforcement efforts in the future.

12. If the department is required to produce policies on requesting identification (which are part of our arrest procedures) to Ms. Berman, harm could result. As stated previously, law enforcement efforts are obstructed when members of the public, in particular those members who seek to obstruct our efforts, gain access to our methods and techniques.

Dated this 10 day of March, 2006.

By: _____
Thomas Nelson

SUBSCRIBED AND SWORN to before me this 10 day of March, 2006.

_____
Notary Public in and for Alaska
My commission expires: 3/20/07