Mary B. Pinkel
Assistant Municipal Attorney
Municipality of Anchorage Department of Law
Civil Division
P.O. Box 196650
Anchorage, Alaska 99519-6650
(907) 343-4545 (phone)
(907) 343-4550 (fax)
uslit@muni.org

Attorney for Defendants Anchorage
Police Department, Officer Robert Dutton,
And Sergeant Gil Davis

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JUDY L. BERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ANCHORAGE POLICE DEPARTMENT, | ) |
| OFFICER ROBERT DUTTON, and | ) |
| SGT. GIL DAVIS, | ) |
| | ) |
| Defendants. | ) |

U.S. District Court Case No. 3:04-cv-227-TMB

### SUPPLEMENTAL EXPERT DISCLOSURE

Defendants the Anchorage Police Department ("APD"), Officer Robert Dutton and Sergeant Gil Davis, ("The Municipal Defendants"), through counsel, the Municipal Attorney, supplement their disclosure of their expert witness through the supplemental expert report of Officer John Daily dated July 18, 2006. In addition, the Municipal Defendants will provide

MUNICIPALITY
OF
ANCHORAGE

OFFICE OF THE
MUNICIPAL ATTORNEY

P.O. Box 196650
Anchorage, Alaska
99519-6650

Telephone: 343-4545
Facsimile: 343-4550

the pertinent policies of the APD after the Plaintiff signs a confidentiality agreement.

Respectfully submitted this 25th day of July, 2006.

FREDERICK H. BONESS
Municipal Attorney

By: _____
Mary B. Pinkel
Assistant Municipal Attorney
Alaska Bar No. 8505030

Certificate of Service
I hereby certify that I caused to be faxed and mailed a true and correct copy of this foregoing document on the 25th day of July, 2006.
To:
Karen Bretz

_____
Sheri Curro

MUNICIPALITY
OF
ANCHORAGE

OFFICE OF THE
MUNICIPAL ATTORNEY
P.O. Box 196650
Anchorage, Alaska
99519-6650

Telephone: 343-4545
Facsimile: 343-4550

Supplemental Expert Disclosure
Case No. 3:04-cv-227-TMB
Page 2 of 2

## SUPPLEMENTAL EXPERT REPORT

Per the request of Municipal Attorney M. Pinkel I was asked to review the depositions taken from Judy L. Berman, Robert Dutton, and Gil Davis to render an opinion if proper or improper police procedures were used by Ofc. Dutton and / or Sgt. Davis. At the time of my previous opinion I did not have access to the depositions.

In short, I have noted in the depositions that most of the basic facts of the case are agreed to by the three people.

1. All agree that the incident that initiated police involvement was the honking of the car horn in the parking lot of Carrs Huffman by the front entry doors. Berman stated approximately seven times total and admitted that the honking was a result of her displeasure reference her parking spot being taken and not for any legitimate reason as a warning as previously cited municipal code requires. The only part that she claims is different is that she did not yell at the other couple, but mouthed at them thru a closed window. Berman stated in her deposition that Ofc. Dutton told her that she was creating a disturbance.

    APD procedures gave the officers the right and responsibility to stop and contact Berman based solely on her admitted actions. As stated previously her actions in continuously honking her car horn in a busy grocery store parking lot has both traffic and criminal implications; AMC 9.36.360A- illegal use of car horn and AMC 8.30.120 A2- Disorderly Conduct, loud noises in a public place meant to disturb. Whether she was yelling or not would only add to the Disorderly Conduct charge but the act was already committed by the honking.

2. The traffic and criminal violations admitted to by Berman also gave the officers the right and responsibility to demand identification. A drivers license for the traffic violation and identification of a legitimate source for the criminal charge. Both of theses are normally accomplished with the drivers license, especially if the subject has been driving at the time of the event.

3. Reading the deposition of Berman, there are statements that there was an initial contact where no identification was asked for, a break in time of a few seconds and then Ofc. Dutton chasing her down to demand identification and thus making it a second stop.

    In the investigation of an incident, even if there were a few seconds in between contacts, that is considered to be a continuation of the investigation. If there had been a much longer gap in time and location then we would consider that to be a second contact.

4. Berman states in her deposition that she walked away from Ofc. Dutton because it was her impression that his contact with her was done. Ofc. Dutton's deposition and report indicate that he was under the impression that Berman was just brushing him off and ignoring his authority in the matter

    The important point here is that the police officer felt that he was in the middle of a legitimate investigation and at that point had the legitimate authority to continue that investigation and Bermans actions were indicating to him that she was not cooperating with him, thus causing the escalation of force by Ofc. Dutton when he blocked her way. At this time, per law and APD procedures Ofc. Dutton had the authority

to make a physical arrest and could have put her in cuffs at any time after he ascertained that her actions constituted the crime of Disorderly Conduct. That being said, there are no rules at APD or in the law that once a subject is believed to have committed a crime or violation, that the person is automatically put in handcuffs or given a ticket. As stated in my previous paper, several factors can decide the outcome of each event.

    5. In Bermans deposition she states that she made no actions or moves to make the officers think that they had to put her in a sleeve guide, then an arm restraint and ultimately into handcuffs. She does say that she was verbally uncooperative due to her view that their contact with her was not legitimate, but not to the extent that the officers allege. She also states that she was not told that she was under arrest.

    The officers decision to handcuff a suspect, as stated earlier is based on several factors. If an officer, by his perception of the subject and situation, decides that the subject should be handcuffed for his safety, the publics safety, or the suspects safety, he is authorized to do so. Police officers are authorized to detain and handcuff subjects in situations where they feel that the additional control is needed for the above reasons and can do so without having to actually arrest or charge the person for a crime. Taking just Bermans admitted verbal uncooperative actions and her admitted physical uncooperative actions of walking away from Dutton, this would give the officers more than sufficient reason to handcuff her. If you take the depositions and reports by the officers into account, then there are obviously a lot more actions, both verbal and physical that would put an officer in the position to have to handcuff her. There is also a contention by Berman that she was not told that she was under arrest but she does not indicate that there was any confusion in her mind as to what was happening to her. In some situations it is advantageous and practical to tell the defendant that they are under arrest and in other situations it is not, but there is no rule or law that requires that a person has to be told ahead of time that they are about to be arrested. It's the officers discretion as to when the subject is advised that they are under arrest and as to why. In Berman's deposition she states that her cuffing was due solely to the officers anger at her verbal challenges, in which case they would have had time, if they chose to do so, to tell her that she was under arrest and then physically put cuffs on her. Going to the other end of the spectrum, where Berman is alleged to be physically uncooperative and pulling away from the officers, it is not practical to tell the subject they are under arrest while you are in the act of countering their resistance and having to force them into handcuffs.

    6. Bermans states in her deposition that she was in the police car, handcuffed in the back seat for approximately 20 minutes by the front of the store with customers walking past and seeing her.

    As stated previously, the time she states is not excessive by any means when considering all that has to be done in that time period and it is common practice for the officer to stay near the scene to complete the citation and paperwork.

Synopsis- After reviewing the depositions, reports and affadavits of Berman, Dutton, and Davis, I feel that there was sufficient probable cause to authorize the contact with and detention of Berman and that her admitted verbal and physical actions gave the Dutton and Davis sufficient reason and authorization to take physical action and handcuff Berman. The officers also appeared to use proper procedures in line with APD procedures, training and experience. My opinions are based on my training and

experience, state and municipal laws and codes, and the procedures and policies of the Anchorage Police Department.

Respectfully submitted,
Sr. Ofc. John Daily

*[signature: John Daily]*

7-18-06