Karen E. Bretz
Attorney at Law
P.O. Box 91457
Anchorage, AK 99509
(907) 277-5847 Voice
(907) 277-5848 Facsimile

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JUDY L. BERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ANCHORAGE POLICE DEPT., | ) |
| OFC. ROBERT DUTTON, and | ) |
| SGT. GIL DAVIS, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Case No.  A04-0227 CV (TMB)

**PLAINTIFF'S REPLY TO OPPOSITION
TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW the plaintiff, Judy Berman, through counsel, and hereby files her reply to the defendants' opposition to her motion for partial for summary judgment. For the reasons discussed below, the defendants' opposition is without merit.

**1.  Factual Background**

The plaintiff refers the Court to the factual summary previously filed in her memorandum of points and authorities in support of the motion for partial summary judgment. The plaintiff

believes that her memorandum fairly states all parties' version of events. The plaintiff also refers the Court to her Complaint and her Affidavit filed with her opposition to the defendants' motion for summary judgment.

The statement of facts in the defendants' opposition contains many errors and misleading assertions, and many of these appear to be intentional. The plaintiff will address some, but not all, of these errors.[1]

The plaintiff also notes, as discussed below, that the basis of her motion for partial summary judgment is that the initial investigative stop of the plaintiff by Officer Dutton was improper as a matter of law, because even assuming his account of the facts, he had no reasonable basis to believe that there was imminent public danger. Since he had no right to stop the plaintiff in the first place, the defendants' claims regarding her conduct after the stop are irrelevant to the plaintiff's motion. Even if she walked away from Dutton before he was finished with her, and even if she pulled away from the officers, and failed to provide identification, as the defendants' claim, she would have been within her rights to do so if the initial stop was improper. <u>Therefore, the most important facts for the purposes of the plaintiff's motion, are those that relating to the facts that were known to Officer Dutton prior to his approach of the plaintiff, and many of the factual assertions in the defendants' opposition are not relevant.</u>

The defendants incorrectly state that the plaintiff honked her horn "at least" four or five times. The plaintiff stated that it was about four or five times. Her exact words were, "Four or five times. I don't know exactly." Deposition of Judy Berman p.32. They also state that the plaintiff "continued" to honk her horn even though she had found another parking space. The

---

[1] Some of these factual errors are also addressed in the plaintiff's opposition to the defendants' motion for summary judgment, and in the affidavit filed with that opposition.

plaintiff did not continuously honk her horn. After sounding her vehicle horn several times when the other vehicle parked, she did not honk the horn again until its occupants passed in front of her vehicle on their way into the store. She clearly stated that she just sounded the horn very briefly to get their attention and mouthed to them that their actions, in disregarding the fact that she had been waiting with her turn signal on, were rather rude. Berman deposition p.35. She also stated in her deposition and in the affidavit filed at Docket 88 that she was not upset or angry, just surprised that someone would ignore another vehicle right in front of them with their turn signal on.

The defendants incorrectly state that Officer Dutton "interrupted" the plaintiff. Dutton clearly states both in his police report and his deposition, that Chens, who had occupied the other vehicle, had already entered the store before he approached the plaintiff. Police report filed at Docket 87; Dutton deposition p.12.

The defendants are incorrect when they state that the plaintiff stated in her deposition that the situation had "become 'mildly adversarial' " prior to Dutton's approaching her. The entire situation had already been resolved, and was over by the time the officer approached the plaintiff. The Chens had entered the store without incident, and the plaintiff was still in her car, according to Dutton. Furthermore, the plaintiff's words are taken out of context. The plaintiff stated that minor disputes involving parking, such as this one, tended to be mildly adversarial. She said that "jockeying for parking spaces," a phrase that the defendants' counsel had previously used, might occasionally be mildly adversarial. Plaintiff's deposition p.54.

The defendants continue to maintain that after Davis joined Dutton and they both restrained her, the plaintiff began "digging in her purse." Docket 104 p.12. It is absurd to suggest that a person who has been restrained and immobilized by two police officers would be in

a position to casually start "digging" in her purse. Davis claims that she took her wallet out of her purse and then went back into her purse for something to write on. Deposition of Gil Davis p.17. It is ridiculous to claim that the plaintiff took her wallet out of her purse for any reason other than showing the officers identification, as they had requested. If she was looking for a pen or notepad she would have retrieved a pen or notepad, not her wallet. Obviously, if she was really refusing to produce identification, she would have no reason to take out her wallet, and would of course want to avoid doing so. And if Davis really thought she might have a concealed weapon, as the defendants' suggest on p. 11 of their opposition, he would never have let her reach into her purse.

      The plaintiff maintains that it was not until she clearly agreed to produce identification, that the officers loosened their grip on her arms just enough to allow her to retrieve her wallet from her purse. The officers saw her look through her wallet for identification. There was never any discussion of writing their names down. Contrary to what is stated in the defendants' opposition, the officers were well aware that the plaintiff was cooperating with them when they violently handcuffed and arrested her. That is what makes their conduct so outrageous and malicious.

      Contrary to what the defendants state on page 14 of their opposition, the plaintiff has in fact provided photographs showing the bruises inflicted by the defendants. The plaintiff also testified in her deposition and in responses to discovery requests about the lasting pain she suffered as a result of them forcefully twisting her arms, instead of merely asking her to place her arms behind her back. However, the basis for her claims is not her physical injuries as much as the wrongfulness of the defendants' conduct in assaulting her, falsely arresting her, violating her civil rights and engaging in malicious prosecution. The defendants do not dispute that such conduct is actionable. The plaintiff's bruises show how forcefully she was restrained, and also

show that both officers grabbed her, contrary to Dutton's statement that Davis was just standing by.[2] Dutton deposition p.17.

The plaintiff adamantly maintains that Dutton did in fact tell her, "If you do it again, I'll find it in my heart to cite you." In his sworn response to discovery requests, Dutton merely states that he does not "recall" making the statement. Defendants' discovery responses, filed with plaintiff's motion for partial summary judgment.

Contrary to the defendants' claim, the plaintiff's motion references both the police reports and depositions of the officers. The plaintiff is certainly permitted to refer to the police reports as exhibits to her motion. While the defendants state that the police reports are hearsay documents, prior inconsistent statements are an exception to the hearsay rule and therefore admissible at trial. Federal Evidence Rule 801(d)(1). In addition, the police officers' statements in their reports are admissible as admissions of a party-opponent. Rule 801(d)(2).

**2. Argument**

**A. The investigative stop of the plaintiff was unlawful.**

In her motion, the plaintiff argues that the investigative stop by Dutton was improper, because he did not have a reasonable basis to believe that that there was imminent public danger, as required by the *Coleman* standard for investigative stops. *Coleman v. State,* 553 P.2d 40 (Alaska 1976). In response, the defendants state that the officer had concerns about the safety of the Chens, and about possible road rage or domestic violence. These arguments are without merit.

---

[2] As noted in plaintiff's motion, this statement is contradicted by Davis himself, who claims that he and Dutton both had her in a sleeve guide, and that all three of them didn't stay in one place for very long.

The mere sounding of a vehicle horn, and alleged yelling something about a parking space[3] (which the plaintiff denies), could not reasonably give rise to these concerns. The officer admits that prior to his approach of the plaintiff, the Chens had safely entered the store, and the plaintiff was still sitting in her vehicle with the windows rolled up. Therefore at the time he approached her, the facts available to Dutton unequivocally demonstrated that there had been a minor dispute over parking, which had already concluded without incident. The defendants' claim that Dutton had any real safety concerns is belied by Dutton's own statements and actions. Dutton admits in his deposition that he had no intention of arresting the plaintiff, and planned to let her go once she produced identification. Dutton deposition p.24. And there is no dispute that he in fact released her and allowed her to enter the store while the Chens were still inside. Therefore it is clear that Dutton didn't believe that imminent public danger existed at the time that he stopped the plaintiff.

The fact that the Chens now claim to have been concerned for their safety, or the safety of their minivan, is irrelevant as that fact was not known to the officer at the time he initiated the contact. Dutton approached the plaintiff based on his own observations, not based on a report by the Chens. There is no dispute about the fact that the Chens were not interviewed until after the plaintiff had been released. (Interestingly, Dutton's report of his interview with the Chens makes no mention of their claiming to have been afraid.) As the defendants have aptly pointed out, whether there was cause to stop the plaintiff must be judged by "the facts available to the officer at the moment of the seizure or the search." *Terry v. Ohio,* 392 U.S. 1, 21-22 (1968). And in *Moreno v. Baca*, 431 F.3d 633 (9th Cir. 2005), the court explicitly stated that officers could not "retroactively" justify stopping the plaintiff based on information they discovered after the fact.

---

[3] See Officer Dutton's Response to Interrogatories filed with plaintiff motion for partial summary judgment.

**B. The plaintiff is entitled to summary judgment on her claim false arrest.**

As discussed in her motion, the plaintiff was arrested because she allegedly resisted the officers by pulling away or turning away from them after they had detained her. The plaintiff denies that she did so. However, since the investigative detention of the plaintiff was in fact unlawful, she would have had a perfect right to pull away, as Dutton said she did, or execute a clockwise turn, as Davis now claims. She also would have had a perfect right to walk away from Dutton when he first approached her. Therefore even if the facts are viewed in the light most favorable to the defendants, the plaintiff was falsely arrested.

The defendants also argue that the plaintiff could have been arrested for disorderly conduct or improper use of a horn. However, the plaintiff was not arrested for those alleged violations, nor did the police officers ever have any intention of arresting her for those alleged acts. The plaintiff denies that there was probable cause to arrest her for those violations, and it is unlikely that anyone has ever been arrested for those violations under facts similar to these. However that issue does not have to be reached, since the plaintiff was not arrested for those violations. The defendants have cited no authority that allows them to justify an arrest for one alleged infraction on the basis that they "could" have arrested the individual for another.

**C. The plaintiff is entitled to summary judgment on her claim of assault and battery.**

As the plaintiff has argued in her motion, since the initial investigative stop was improper, the officers had no right to physically restrain the plaintiff when they thought she was improperly walking away from Dutton and declining his request for identification. They also had no right to handcuff her when, according to them, she pulled away from them. The officers' actions clearly amount to harmful or offensive contact with her person. The plaintiff maintains that the officers'

actions hurt her, and that she told them they were hurting her, but they wouldn't stop. She has also provided the defendants with photographs that show the bruises on her arms. However, to make out a claim for assault and battery, it is not necessary to show injury or even intent to cause injury. All that is necessary is a harmful or offensive contact. <u>See</u> Plaintiff's Memorandum in Support of Motion p. 17. The officers admit that they engaged in this conduct; therefore the plaintiff is entitled to summary judgment on her claim of assault and battery.

The defendants' argument that the plaintiff was not assaulted, is based entirely on the fact that they believe Dutton had the right to initiate an investigative stop. However since, as discussed above, Dutton did not have the right to stop the plaintiff, that argument must fail.

**D. The plaintiff is entitled to summary judgment on her claim of violation of civil rights pursuant to 42 U.S.C. § 1983.**

In her motion, the plaintiff argues that she is entitled to summary judgment on this issue because the initial investigative stop was unconstitutional as a matter of law. Therefore, the officers violated her constitutional rights when Dutton initially stopped her, as well as when the officers subsequently restrained her and later arrested her. As discussed above, since Dutton did not have the right to initially stop the plaintiff, the officers had no right to detain her when she walked away, and no right to arrest her when she allegedly resisted their detention. All of these actions constituted improper seizures of the person contrary to the Fourth Amendment.

The defendants' argument in their opposition is based upon their assumption that the initial stop of the plaintiff was in fact valid. However, since the initial stop was actually improper, as discussed above and in the plaintiff's motion, that argument must fail. Therefore the plaintiff restates the argument on p. 18-19 of her memorandum in support of her motion, and respectfully refers the court to that section of her memorandum.

### E. The search of the plaintiff's wallet was unconstitutional as a matter of law.

The plaintiff maintains that her arrest was unlawful for many reasons, including those discussed in her motion, and the fact that she was in fact <u>complying</u> with the officers request for identification at the time she was arrested. However, even if the arrest had been lawful, the search of her wallet was unconstitutional as a matter of law.

In order to pass constitutional muster, the search of the plaintiff's wallet must have been constitutional under <u>Alaska</u> law. *Brown v. Ely,* 14 P.3d 257, 261 (Alaska 2000), citing *Cole v. Nebraska State Bd. of Parole,* 997 F.2d 442, 444 (8th Cir. 1993) ("An arrest by a state actor that is not authorized by state law is actionable under § 1983 as a seizure contrary to the Fourth Amendment."); *Bissonette v. Haig,* 800 F.2d 812, 816 (8th Cir. 1986) (en banc), *aff'd by operation of law,* 485 U.S. 264, 108 S.Ct. 1253, 99 L.Ed.2d 288 (1988)("[A] search unauthorized by state law would ipso facto violate the Fourth Amendment.") Therefore the cases cited by the defendants under Federal law, and under other jurisdictions, are not relevant to this inquiry. Many of the rules regarding search and seizure, and the privacy rights of individuals, are more stringent under Alaska law than under Federal law.

Under Alaska law, a search of the area within the arrestee's immediate control, and the opening of containers, without a warrant, is only permitted to the extent the search could be expected to yield weapons, or evidence of the crime for which the individual has been arrested.

In *Dunn v. State,* 653 P.2d 1071 (Alaska App. 1982) the court stated that even upon the "lawful, non-pretextual" arrest of an individual, containers cannot be opened if "under the circumstances, it could not reasonably be believed that the container would yield a weapon or evidence of the crime for which the arrest was made." *Id.* at 1082. *See also Snider v. State,* 958 P.2d 1114 (Alaska App. 1998): "A law enforcement officer acting without a warrant may search a

suspect incident to arrest if: the arrest is valid, the search is carried out roughly contemporaneously with the arrest, the arrest is not a pretext for the warrantless search, and the arrest is for a crime, evidence of which could be concealed on a person." (Citations omitted); *Johnson v. State,* 88 P.3d 1137, 1139 (Alaska App. 2004): "Under Alaska law, an officer may conduct a limited search for weapons. Beyond this, the officer may only search for evidence related to crimes for which the police have probable cause to arrest."(Citations omitted). In *Crawford v. State,* 138 P.3d 254 (Alaska 2006) the court noted that, "Search incident to lawful arrest allows the warrantless search of the area 'within [the arrestee's] immediate control' at the time of the arrest to ensure officer safety and to preserve evidence related to the crime." *Id.*

In this case the plaintiff was arrested for allegedly resisting or interfering with police officers. Obviously, her wallet could not reasonably be expected to yield evidence of resisting or interfering with a police officer. Likewise, it could not be expected to contain a weapon. Therefore the search of her wallet was unconstitutional as a matter of law, even if the arrest had been valid, although the plaintiff maintains that the arrest clearly was not valid.

The purpose of the above discussion is to demonstrate that the search of the plaintiff's wallet was improper, even if one were to assume that the arrest was in fact valid. However, as discussed above, and in the plaintiff's motion, the plaintiff believes that the court should find that the arrest was <u>invalid</u> as a matter of law, even if the evidence is viewed in the light most favorable to the defendants. Since the officers had no right to stop and detain the plaintiff, they had no right to arrest her even assuming that she was refusing to show identification at the time of her arrest, which she, of course, denies. Therefore any attempt by the defendants to justify the search as one incident to lawful arrest, should also fail due to the fact that the arrest itself was unlawful.

**F. The defendants' claim that the search was constitutional *as a matter of law* must fail.**

In the defendants' opposition, they not only dispute that the search of the wallet was <u>unconstitutional</u> as a matter of law; they go one step further and ask the court to find that it was in fact <u>constitutional</u> as a matter of law. That argument must fail. Even if the court were not to agree that the search was improper as a matter of law, it would not follow that it was in fact proper as a matter of law. The defendants fail to show an absence of factual issues in this argument; in fact they premise their argument on the fact the plaintiff was arrested "[a]fter [she] continued to evade" the officers, which she has adamantly denied. Docket 104 p. 25. They also make the rather bizarre argument that, "She was required by Alaska law to produce identification to peace officers. AS 28.15.131. Accordingly, [Davis'] action in removing the identification from her wallet was justified." Docket 104 p.28. First of all, the plaintiff has pointed out in numerous previous pleadings that AS 28.15.131 does not apply to this situation, because Dutton admitted in his deposition that he was seeking to identify the plaintiff, not find out if she was licensed to drive. Dutton deposition p.33. The court in *Schraff v. State,* 544 P.2d 834, 839 (Alaska 1975) held that a licensing statute cannot be used for the purpose of determining a person's identity, or any other information not related to the licensing requirement. Second, that statute provides for motorists to produce their driver's licenses, not for the police to search their wallets for them. Third, the plaintiff has always adamantly maintained that she was producing her identification when Davis suddenly grabbed her wallet away from her.

Therefore, should the court decline to find that the search of the wallet was unconstitutional as a matter of law, the matter should be submitted to the jury.

### G. The police officers are not entitled to qualified immunity.

The defendants argue that even if the Court finds that the officers violated the plaintiff's constitutional rights, it should nonetheless find that they are entitled to qualified immunity. The parties agree, however, that for the purposes of granting summary judgment on qualified immunity, the facts must be viewed in the light most favorable to the plaintiff. <u>See</u> defendants' Motion for Summary Judgment on Qualified Immunity, and plaintiff's Opposition thereto. As the plaintiff has noted in her Opposition to Motion for Summary Judgment on Qualified Immunity, if the facts are viewed in the light most favorable to the plaintiff, it would have been clear to a reasonable officer that he was violating the plaintiff's constitutional rights. Any reasonable officer, for example would be well aware of the fact that it was unlawful to arrest the plaintiff for resisting an officer, when in fact she was not resisting, but in fact clearly complying with the police. As the plaintiff argued in her opposition to that motion, the defendants' motion for summary judgment on qualified immunity should be denied.

The plaintiff would further argue that the court should find that the defendants are <u>not</u> immune as a matter of law. As discussed above, even if the facts are viewed in the light most favorable to the <u>defendants</u>, it would have been abundantly clear to a reasonable officer, in the situation presented to Officer Dutton, that there was no imminent public danger at the time that he detained the plaintiff.

**3. Conclusion**

For the foregoing reasons, as well as those discussed in her motion, the plaintiff, Judy Berman, respectfully requests that the Court grant her Motion for Partial Summary Judgment.

DATED this 18th day of September, 2006.

/s/ Karen E. Bretz
Karen E. Bretz
Attorney at Law
P.O. Box 91457
Anchorage, AK 99509
(907) 277-5847 Voice
(907) 277-5848 Facsimile
e-mail: kbretz@alaska.net
Alaska Bar No. 9911058

Certificate of Service

I certify that on the 18th day of September, 2006 a true and correct copy of the foregoing document was served electronically on:

  Mary Pinkel, Assistant Municipal Attorney
  Municipality of Anchorage

/s/ Karen E. Bretz
  Karen E. Bretz