Karen E. Bretz
Attorney at Law
P.O. Box 91457
Anchorage, AK 99509
(907) 277-5847 Voice
(907) 277-5848 Facsimile

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JUDY L. BERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ANCHORAGE POLICE DEPT., | ) |
| OFC. ROBERT DUTTON, and | ) |
| SGT. GIL DAVIS, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Case No.  A04-0227 CV (TMB)

### REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S FIRST MOTION IN LIMINE

The plaintiff, Judy L. Berman, by and through counsel, and pursuant to the Court's Order at Docket 129, hereby files her reply to the defendants' opposition to her first motion in limine.

**Argument**

**1. The Chens' subjective impressions that were never conveyed to the police cannot be relevant to the facts at issue in this case.**

In their opposition to the plaintiff's motion, the defendants argue that the Chens' claimed

subjective impressions that the plaintiff was "acting abnormally," which were never conveyed to the officers, and in fact first came to light three years after the fact, "lend credibility" to the officers' decision to stop the plaintiff. However, information that was not available to the officer at the time he made the decision to stop the plaintiff, clearly cannot be used to justify his actions.

In *Moreno v. Baca,* 431 F.3d 633 (9th Cir, 2005) the court confronted "the question of whether a search or seizure can be considered 'reasonable' if the facts that rendered the search 'reasonable' were unknown to the officer at the time of the intrusion." The court unequivocally stated, "We hold that it cannot." *Id.* at 639. Likewise, in *Terry v. Ohio,* 392 U.S. 1 (1968) the court stated that the reasonableness of a search or seizure must be judged based on the "facts available to the officer at the moment of the seizure or the search." *Id.* at 21-22.

Moreover, it is clear that the officers did not consider the plaintiff's conduct to be "explosive," and that they did not believe that she posed any kind of safety risk to the Chens or to the public. On the contrary, the officers own statements and conduct make it clear that they believed that they were dealing with nothing more than a minor dispute that had already concluded without incident prior to their contact with the plaintiff.

The defendant officers' statements and conduct that demonstrate that they did <u>not</u> in fact have any safety concerns regarding the plaintiff include the following:

1. Officer Dutton's stated reason for approaching the plaintiff was "to determine if she was in need of assistance." Defendants Ofc. R. Dutton and Sgt. G. Davis Answer to Complaint.¶ 8 states: "APD Employees admit that Officer Dutton approached Plaintiff's car in the parking lot to determine if she was in need of assistance. He identified himself to her."

2. The officers made no mention of the Chens to the plaintiff, and did not express any concerns about their safety. If the officers had any concerns about possible domestic violence

issues they would have, at the very least, asked the plaintiff if she knew the Chens.

3. Officer Dutton clearly states, both in his deposition testimony and in his police report, that he witnessed the Chens enter the store without incident while the plaintiff was still sitting in her car. Dutton deposition p.12; Exhibit 1 p.1, 2.

4. In his deposition testimony, Dutton admits that he didn't notice anything unusual about the Chens' conduct or demeanor as they walked to the store entrance, or any indication that they were nervous. In response to the question, "Were they looking back at her or were -- you know, were they looking around or acting nervous?" he answered "I don't know how they were acting." Dutton deposition p.11.

5. Dutton's deposition testimony clearly indicates that he had no intention of taking any further action once the plaintiff produced identification. Dutton deposition p.24. If he had thought the defendant to be "explosive" or if he had any concern that her behavior might in some way "escalate," then he surely would not have had the intention of simply checking her ID and sending her on her way. It is also clear that Dutton thought that whatever momentary disagreement the plaintiff may have had with the Chens had already been satisfactorily resolved, from his statement that he "could have resolved the whole issue of the parking space I'm sure, which she kind of did on her own anyway, parking next to the space she initially wanted, I guess. I don't know that we would have done anything." Dutton deposition p.24.

6. Officer Dutton did in fact ultimately release the plaintiff and allow her to enter the store while the Chens were still inside. If the officer thought the plaintiff might hurt the Chens, or anyone else, he would not have released her and allowed her to enter the store, especially while they still were inside. The police do not ordinarily release individuals they believe to be dangerous into crowded supermarkets.

**2. The Chens did not "witness the interaction between the officers and Ms. Berman."**

The defendants argue that, "The Chens witnessed the interaction between the officers and Ms. Berman after Officer Dutton stopped Ms. Berman." Defendants' Opposition to Plaintiff's Motion in Limine No. 1, p.3. This statement is extremely misleading. In fact, even by their own admission, it was only Ms. Chen who witnessed any interaction, and she only witnessed the first few seconds of Dutton's contact with the plaintiff, and nothing after that. Affidavit of Sharon Chen at Docket 65, p.2. She certainly cannot shed any light on what occurred after the plaintiff wished Dutton a great night and began to walk towards the store entrance, what occurred when Dutton was joined by Davis, or the events leading up to the officers' handcuffing the plaintiff. Furthermore, as discussed more fully in the next subsection, there are serious problems with her account of even the brief part of the interaction she claims to have witnessed, and it contradicts defendant Dutton's own account.

Possibly the most crucial issue in this case is whether the plaintiff was in fact cooperating with the police officers, and complying with their request for identification, as she adamantly maintains she was, when they suddenly handcuffed and arrested her.

The plaintiff states that even though Officer Dutton had indicated that he wasn't going to cite her for anything, and did not protest as she began to walk away, when she reached the store entrance Dutton was joined by Sergeant Davis, and the two of them grabbed her arms with such force that they inflicted large bruises. Affidavit of Plaintiff at Docket 93 p.3, 5.

The plaintiff asked the officers to let go of her. The officers did not let go of her, and they told her that she had to show them identification. The plaintiff clearly told the officers that she would produce identification, but that they needed to let go of her arms so that she could do so.

They then loosened their grip on the plaintiff just enough for her to remove her wallet from her purse. The plaintiff was holding her wallet in her hands, looking through her wallet for her license, when Davis suddenly grabbed the wallet out of her hands, and both men handcuffed her. Affidavit of Plaintiff at Docket 93 p.5.

The officers' contention that the plaintiff removed her wallet from her purse for any other reason than to comply with their request, makes no sense. The only reason the officers loosened their grip on the plaintiff even slightly, in order to enable her to retrieve her wallet from her purse, was because the plaintiff told them she would show them ID. Furthermore, it totally defies credibility to suggest that a person who is refusing to show identification would actually remove her wallet from her purse.

Although he denies that the plaintiff was producing identification, Sgt. Davis does admit in his police report that he took the plaintiff's wallet away from her before he had any intention of arresting her. Exhibit 1 p.3. "She had her purse in her hands. She indicated that her ID was in it but would not open it. I took it away from her, she struggled and we handcuffed her." *Id*.[1]

The Chens did not witness any of these events and therefore their testimony is not relevant to the claims of false arrest, assault and battery, malicious prosecution, violation of civil rights (42 USC § 1983), or punitive damages.

**3. Ms. Chen could not have heard the plaintiff tell Officer Dutton that she was a "U.S. citizen" or that she would "sue" him.**

It is impossible for Sharon Chen to truthfully testify that she heard the plaintiff make the

---

[1] At his deposition, Davis changed his story and said that the wallet was removed from the plaintiff's left hand, and was removed in the process of handcuffing her. He attempts to explain this inconsistency by stating that the police report is just a "summation." However, the police report does not "summarize" his deposition testimony, it plainly contradicts it. Davis deposition p.13, 17.
Dutton's account, on the other hand, contradicts both versions of Davis' account. He states that the plaintiff in fact dropped her wallet. Exhibit 1 p. 2.

statement that she would "sue" Officer Dutton, or that she heard her say "I am a U.S. citizen." There are a number reasons why this testimony would be untruthful.[2]

First of all, the plaintiff is certain that she never stated "I am a U.S. citizen," or any words to that effect, and that she made no mention of suing Dutton when he first approached her. Affidavit of the Plaintiff at Docket 93 p.3.[3] It is also obvious that the plaintiff would have no reason to talk about suing Dutton when all he had done was ask if there was anything wrong with her car horn.

Second, Dutton's report makes no mention of the plaintiff making either of those statements during the initial contact. Exhibit 1 p.1. If the plaintiff had immediately started talking about suing him, Dutton would undoubtedly have considered that unusual and noteworthy, and would have included it in his report. His deposition testimony describing the initial encounter also makes no mention of the plaintiff making those statements when he first approached her. Dutton deposition p.13.

Finally, defendant Dutton himself clearly states both in his police report and in his deposition that he saw both of the Chens enter the store prior to his contact with the plaintiff, while she was still inside her vehicle. Dutton deposition p.12; Exhibit 1 p.1, 2. On page 1 he states, "The two people (which I later identified as C. Chen and S. Chen) went into the store." And on page 2 he states, "C. Chen and S. Chen exited the Carrs after Berman had been released. **They did not witness my contact with Berman or the arrest of Berman.** " (emphasis added). Exhibit 1.

---

[2] The plaintiff also notes that the defendants did not inform her that Ms. Chen was now claiming to have heard her make those statements until March 13, 2006, more than two months after the close of discovery.

[3] The plaintiff made no mention of suing the officers until after they had surrounded her, and grabbed her by the arms with enough force to leave bruises on both arms.

**Conclusion**

Based upon the foregoing, as well as on the plaintiff's Motion in Limine No. 1, the plaintiff respectfully requests that the testimony of Chih and Sharon Chen be excluded at trial.

DATED this 23rd day of October, 2006.

/s/ Karen E. Bretz
Karen E. Bretz
Attorney at Law
P.O. Box 91457
Anchorage, AK 99509
(907) 277-5847 Voice
(907) 277-5848 Facsimile
e-mail: kbretz@alaska.net
Alaska Bar No. 9911058

Certificate of Service

I certify that on the 23rd day of October, 2006 a true and correct copy of the foregoing document was served electronically on:

Mary Pinkel, Assistant Municipal Attorney
Municipality of Anchorage

/s/ Karen E. Bretz
 Karen E. Bret