IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JUDY L. BERMAN,<br><br>              Plaintiff,<br><br>  vs.<br><br>ANCHORAGE POLICE DEPT., OFFC. ROBERT DUTTON, & SGT. GIL DAVIS,<br><br>              Defendants. | Case No.  3:04-cv-227  TMB<br><br>**O R D E R** |

    Defendants move for summary judgment on the issue of qualified immunity.  Docket 63, memorandum at Docket 69.  Plaintiff opposes the motion, (Docket 87), and Defendants have replied.  Docket 103.   This Court heard oral argument on September 20, 2006, and stayed further briefing in this matter until the issue of qualified immunity is resolved.  Docket 126.

## Qualified Immunity

    "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[1]   A state actor, such as a law enforcement officer, is entitled to qualified immunity in an action filed under § 1983 if his or her conduct during a criminal investigation either does not violate a federal constitutional right, or the constitutional right was not clearly established on the date of the alleged violation.[2]  "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading

---

    [1] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Morley v. Walker*, 175 F.3d 756, 760 (9th Cir. 1999) ("Qualified immunity protects government officials performing discretionary functions where their conduct is objectively reasonable.").

    [2] *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

qualified immunity is entitled to dismissal before the commencement of discovery. Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts."[3]

In determining whether a government official is entitled to qualified immunity, the Court must (1) identify the specific right allegedly violated; (2) determine whether the right was clearly established at the time of the violation; and (3) decide whether a reasonable official could have believed the at-issue conduct violated the identified right.[4] "Only conduct that an official could not reasonably have believed was legal under settled law falls outside the protective sanctuary of qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)."[5]

The threshold question therefore is "whether the facts, taken in the light most favorable to the party asserting the injury, [Berman], show the officer's conduct violated a constitutional right."[6] If no constitutional right was violated, the court need not reach the issue of qualified immunity.

---

[3] *Cunningham v. City of Wenatchee*, 345 F.3d 802, 809 (9th Cir. 2003).

[4] *See Carlo v. City of Chino,* 105 F.3d 493, 500 (9th Cir. 1997), *cert. denied*, 118 S.Ct. 1336 (1998); *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir. 1996); *Kelley v. Borg*, 60 F.3d 664, 666 (9th Cir. 1995).

[5] *Martinez v. City of Oxnard*, 270 F.3d 852, 855 (9th Cir. 2001) ("a police officer who conducts a coercive, custodial interrogation of a suspect who is being treated for life-threatening, police-inflicted gunshot wounds may [not] invoke qualified immunity in a civil suit for damages under 42 U.S.C. § 1983." *Id.* at 854); *see also Carey v. Nevada Gaming Control Board*, 279 F.3d 873, 882 (9th Cir. 2002) ("a reasonable officer ... would have known that Carey had a clearly established Fourth Amendment right not to identify himself, and that the Nevada statutes ... were unconstitutional to the extent they allowed Carey to be arrested for exercising his rights ... [and] therefore ... [the officer] is not entitled to qualified immunity").

[6] *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001).

**- Facts**

According to Berman,[7] the events giving rise to this case began on the evening of April 6, 2002.  Berman was attempting to park her car the Carrs grocery store on Huffman Road in Anchorage, Alaska.  She was waiting to pull into a parking space directly in front of the store when a van (driven by Mr. & Mrs. Chen) coming from the opposite direction pulled in and took the space.  Berman honked at the Chens 4 or 5 times to let them know she had been waiting for that space.  She then pulled into the adjacent parking space when it promptly opened.  When the Chens left their van and walked past the front of her car on the way into the store, Berman honked at them another "couple of times."  As she got out of her car, Berman was approached by Anchorage Police Department (APD) Officer Robert Dutton who asked if there was something wrong with her horn.  Berman told Dutton there was nothing wrong with the horn, she thought it rude of the Chens to take the parking space she had been waiting for.  Dutton was more concerned with the fact that she had made an illegal turn into the parking space and that her use of the horn was disturbing the peace.  According to Berman, Dutton then told her that "if you do it again, I'll find it in my heart to cite you."  Berman said there was a pause, during which nothing more was said, leading Berman to assume the conversation was over.  She then told Dutton to have a great night and walked away.  At that point, Dutton came after Berman and asked to see her I.D.  Berman responded: "no, you don't have the right to stop me for no reason.  I thought that was a second stop... I just thought this is an afterthought designed to harass me."  As a result, she continued to walk away from Dutton toward the store entrance.  Just about the time Berman got to the store entrance, first Dutton and then a second APD officer, Gil Davis, grabbed her arms.  Berman told them to let go, but was told that she needed show the officers her I.D.  And at that point, Berman agreed to show her I.D. but told the officers they needed to release her arms so she could get it.

The officers did not release her but loosened their grip enough so that she could get her wallet from her purse. After she pulled her wallet out and was looking for her license Officer Davis

---

[7]  The facts are taken directly from Ms. Berman's deposition testimony, unless otherwise noted.

3

became extremely angry and just grabbed it out of Berman's hands.[8]  Davis and Dutton the twisted Berman's hands behind her and placed her in handcuffs.  Berman acknowledges that at the time of the incident she knew her license had been expired for more than a year.

**- Search and Seizure**

Plaintiff's Complaint does not explain precisely which of her civil rights were violated under 42 U.S.C. §1983,  but her Opposition to the Motion for Summary Judgment focuses solely on the right to be free from unreasonable search and seizure.  Docket 87.  At oral argument, counsel for Plaintiff clarified that the only claim under section 1983 is for unreasonable search and seizure, and that she is not making a constitutional claim for excessive force.

The Court finds that on the facts as presented by Berman, she has not shown that the officers' behavior violated her right to be free from unreasonable search and seizure.  She does not dispute that she argued with the officers regarding whether she had to produce a drivers' license.  Alaska Statute 28.15.131 requires the production of a driver's license when driving a motor vehicle, and requires the presentation of the license for inspection upon the demand of a peace officer.  Although Plaintiff argues that the demand for her license was unrelated to her use of a vehicle, this Court finds that the demand for production of the license was tied closely to the time and circumstances surrounding the use of a motor vehicle, (including an illegal left-hand turn),  and that the request was appropriate.  Accordingly, her refusal to produce it was unwarranted.[9]

---

[8]In her affidavit dated June 2006, Ms. Berman's narrative about these events is somewhat different:  "While I was looking through my wallet for my driver's license, I expressed my outrage at how they were treating me.  It was in that context that I mentioned that I am an attorney, that I knew they had no right to do what they were doing to me, and that I would sue them.  Sergeant Davis suddenly became visibly angry, and grabbed the wallet out of my hands, before I had a chance to find my license and show it to the officers. . . . It was clear to me that the officers became enraged at my comment about suing them  . . . "  Docket 88.

[9]  Even if the Court found that the officers were not entitled to request her license, their actions would survive the second prong of the qualified immunity analysis.  This Court finds that the

The Court notes that although Plaintiff claims an unlawful search and seizure, the item uncovered in the search and seizure was the very thing she says she was attempting to produce for the officers - her driver's license. Although she complains about the nature of the physical restraint used against her during the search and seizure, she does not in fact claim a use of "excessive force" under § 1983. Furthermore, her brief, subsequent detention cannot be considered unreasonable in light of her expired driver's license. This is so particularly in light of the numerous alleged violations of Alaska Statutes and Alaska Municipal Codes that occurred in a short period of time, including: creating a disturbance in the parking lot in violation of AMC 8.30.120 & AS 11.61.110; failure to produced identification in violation of AMC 9.12.030 & AS 28.15.130; interfering with a peace officer by obstructing an active investigation of a crime by fleeing after having been told to stop in violation of AMC 08.30.010A.4.

Government officials are entitled to qualified immunity from suit for damages, "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."[10] Given the facts alleged by Berman, it would appear that the officers named as defendants did not violate Berman's right to be free from unreasonable search and seizure.

Finally, with respect to Defendant APD, although granting qualified immunity for the officers would not automatically dispose of the claims against the police department, a finding of no constitutional violation does dispose of those claims.[11]

---

officers could have reasonably, even if mistakenly, believed that their conduct did not violate a clearly established constitutional right, in reliance on A.S. 28.15.131. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156-59 (2001).

[10] *Anderson v. Creighton*, 483 U.S. at 638 (citations omitted).

[11] *See Munger v. City of Glawsgow Police Department*, 227 F.3d 1082, 1088 (9th Cir. 2000). ("To hold a police department liable for the actions of its officers, the Mungers must demonstrate a constitutional deprivation, and show that the deprivation was visited pursuant to a police department custom or policy.")

**- State Tort Claims**

Section 1983 does not provide a cause of action for violations of state law.[12] Plaintiff argued at oral argument that even if qualified immunity is granted to the officers in this case, her three state tort claims would survive: False Arrest, (Count 1), Assault and Battery, (Count 2), and Malicious Prosecution (Count 3). The three tort claims are governed by Alaska law in this instance. Although Defendant's Answer argues that Plaintiff's state tort claims are barred by A.S. 09.65.070(d)(2),[13] neither party has adequately addressed qualified immunity under Alaska law in their summary judgment briefing. Having dismissed the Federal § 1983 claim on qualified immunity grounds, this Court declines to exercise supplemental jurisdiction over the state tort claims pursuant to 28 U.S.C. § 1367(c)(3).

## Conclusion

Based on the foregoing, the Motion for Summary Judgment at Docket 63 is GRANTED as to Plaintiff's § 1983 claim. Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE on jurisdictional grounds. All other pending motions are DENIED AS MOOT.

Dated at Anchorage, Alaska, this 31st day of October, 2006.

/s/ Timothy Burgess
Timothy M. Burgess
United States District Judge

---

[12] *See Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996).

[13] This provision instructs that "[a]n action for damages may not be brought against a municipality or any of its agents, officers, or employees if the claim . . . is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by a municipality or its agents, officers, or employees, whether or not the discretion involved is abused."